## JULIUS E. FRANK et al., Respondents, v. CHARLES J. FREE, Appellant.

St. Louis Court of Appeals.   Argued and Submitted March 3, 1915. Opinion Filed April 6, 1915.

1. **NEGLIGENCE: Negligent Driving: Death of Child: Negligent Speed: Sufficiency of Evidence.** In an action for the death of a child from being run over by a wagon on a city street, evidence *held* to show that the horse and wagon were not being driven at an extraordinary or unlawful speed and that the driver did not fail to keep the horse under control.

2. ———: ———: ———: **Failure to Keep Lookout: Sufficiency of Evidence.** In an action for the death of a child from being run over by a wagon on a city street, evidence *held* insufficient to sustain an assignment of negligence that defendant's driver was negligent; in that he failed to exercise ordinary diligence, caution and care in watching out for the safety of persons lawfully on the street, in consequence of which the child was injured, which, in effect, was a charge that the driver saw, or by the exercise of reasonable care could have seen, decedent in a position of peril in time to have avoided striking her.

3. **EVIDENCE: Conclusiveness on Plaintiff.** Where all the evidence introduced comes from plaintiff's own witnesses, and fails to show that defendant is liable, the jury cannot disregard such evidence and find for plaintiff.

4. **NEGLIGENCE: Negligent Driving: Death of Child: Necessity of Proving Negligence.** In an action for the death of a child from being run over by a wagon on a city street, the mere fact that the child was run over and killed by a wagon in the charge of defendant's driver was insufficient to warrant

a recovery, in the absence of proof that the driver was negligent.

5. ———: **Necessity of Proving Negligence.** Where an injury may have happened from one of two causes, for one of which, and not the other, defendant is liable, the burden is cast upon plaintiff to show, with reasonable certainty, that the cause for which defendant is sought to be charged with liability was the producing cause of the accident, and if the evidence leaves the cause to conjecture, plaintiff cannot recover.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

REVERSED.

*Jeffries & Corum* for appellant.

(1) The mere fact that a child was run over by defendant's wagon while on the public thoroughfare does not in itself support an inference that the injury was caused by any negligence on the part of defendant. Lee v. Jones, 181 Mo. 298; Parsons v. Yeager Milling Co., 7 Mo. App. 594; McNamara v. Beck, 52 N. E. (Ind. App.) 707; Stock v. Wood, 136 Mass. 353. (2) The duty of a driver is to look toward the front and he does not have to anticipate that pedestrians will run into the side of his vehicle and injure themselves. Hight v. Bakery Co., 168 Mo. App. 459; Osterheld v. Peoples, 208 Pa. St. 310; Hebard v. Mabie, 98 Ill. App. 543. (3) A driver is under no obligation to anticipate that a child on the sidewalk will attempt to cross the street and collide with his vehicle. Mascheuk v. Railroad, 71 Mo. 278. (4) If A puts B on the stand as his only witness to prove a fact, and does not prove it, then he is precluded from impeaching B or from otherwise inviting the jury to disregard B's testimony. Roden v. Transit Co., 207 Mo. 408. (5) If the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which

the defendant is liable produced the result, and if the evidence leaves it to conjecture the plaintiff must fail in his action. McGrath v. Shoe Co., 187 Mo. 288; Gorramson v. Mfg. Co., 186 Mo. 307; Warner v. Railroad, 178 Mo. 134; Caudle v. Kirkbride, 117 Mo. App. 417;. Browning v. Railroad, 106 Mo. App. 729; Cathron v.· Pkg. Co., 98 Mo. App. 348.

*Wyrick & Eaken* for respondents.

(1) A demurrer to the evidence admits every fact proved, or which may be inferred from the testimony to be true, and should never be sustained unless the evidence, when thus considered, fails to prove some essential fact of plaintiff's case. McNichol v. Pacific Ex. Co., 12 Mo. App. 401; Noeninger v. Vogt, 88 Mo. 589; Harris v. Railroad, 89 Mo. 233; Donohue v. Railroad, 91 Mo. 357; Holman v. Pints Creek Min. Co., 102 Mo. App. 423; Creighton v. Modern Woodmen, 90 Mo. App; 378. (2) On a demurrer to the evidence the court must indulge every inference of fact in favor of the party offering the evidence which a jury might indulge with any degree of propriety. Pauck v. St. Louis Dressed Beef Co., 159 Mo. 467; Bender v. Railroad, 137 Mo. 240; City v. Railroad, 114 Mo. 13; Field v. Railroad, 46 Mo. App. 449; Davis v. Clark, 40 Mo. App. 515; Parker-Washington v. Dennison, 249 Mo. 449; Barr & Martin v. Johnson, 170 Mo. App. 394; Ladd v. Williams, 104 Mo. App. 390; Owen v. O'Reilly, 20 Mo. 603; Kattelman v. Fire Assn., 79 Mo. App. 447; Leeright v. Ahrens, 60 Mo. App. 118; Craine v. Street Ry., 246 Mo. 393.

REYNOLDS, P. J.—Between four and five o'clock in the afternoon of July 28, 1911, a fairly clear day, a delivery wagon owned by defendant was being driven along Burd avenue, in the city of St. Louis. The wagon was an ordinary laundry wagon, with covered sides and

top, drawn by one horse. The driver had delivered a laundry package across the street from plaintiffs' residence. He then drove south about fifteen feet, turned slowly around and came back north on Burd avenue, intending to turn on Wells avenue, which intersects Burd avenue. Burd avenue is about thirty feet wide. Just before the accident the wagon had completed its turn and was going north along Burd avenue parallel with and its right wheels about four feet away from the right hand curb of the street. The horse was a gentle animal and was traveling at a slow walk. On the seat with the driver was a boy named Gaines, about eleven years old. Another boy, Lieberstein, about fourteen years old, was on the west sidewalk, that is, on the opposite side of the street from that upon which plaintiffs' house was situated and near where the wagon had stopped when delivering the packages. This boy was throwing nails at Gaines. While there were other people in the vicinity, these two boys and the driver were the only persons who witnessed the accident. The plaintiffs' child, a little girl two years and eleven months old, had been taken from her home, which was on the east side of Burd avenue, to a store on the west side of that street, and as we understand nearly opposite the home of the child, by a young girl friend of the family and brought back to her home. There the young girl left her, the child being on the front porch of her home, the porch close to the pavement. This was the last the young girl saw of the child until a very short time afterwards, just after crossing the street and when, walking toward her own home and along Burd avenue, the young girl heard the driver of the wagon "holler 'whoa' to his horse," and she turned around and began running back and saw the driver pick up the child from the street. As the wagon was driven slowly north on Burd avenue and about opposite the plaintiffs' home, the boy Gaines, who was seated with the driver, testified that he felt a jar, like

the back wheel had run over something. As soon as the jar was felt, the driver stopped the horse, which had taken about four steps, as the boy testified. Asked if he had not seen the little girl in the street before the wagon struck her, the boy said that he had not. He further testified that he was looking at the driver and that the latter was looking to the front; had his head turned that way. On cross-examination this boy testified that the horse was going at a medium walk; that they had turned around on Burd avenue, expecting to go on Wells avenue, and the first knowledge he had of any accident or that anything had occurred, or that anything had been run over, was when he felt the bump; had not seen the child; had not seen her run over by the wagon.

The driver, Godwin, testified that he had driven south on Burd avenue and delivered a bundle of laundry. Driving a little further along Burd avenue, he turned around, drove fifteen feet south and then turned around, going north on Burd avenue. While he was turning around some boy was throwing nails at the boy in the wagon with him, and the boy started to get off to go after him, when the driver told him to sit down and not pay any attention to the one who was throwing nails. Driving along Burd avenue north, when about opposite the residence of plaintiffs, he felt the wagon run over something. At the time he was looking straight ahead; had not seen any child on the street nor on the sidewalk, nor on the steps of any of the houses; was driving in a walk. After he felt the hind wheel drive over something and had gone about fifteen feet, he stopped, jumped out of the wagon, ran back to where he found the child lying, picked it up and carried it into the first door that he came to, which happened to be the door of the house of the child's parents. This was his testimony in chief. He further testified that at the time of the accident the left real wheel of his wagon was about the center of the street and

about ten feet from the east curbing. He was looking ahead, he repeated, and driving slowly; was doing that when he felt the jar on the rear wheel and that was the first he noticed or knew that he had run over anything; had seen no one in the street. When he felt the jar and looked back his first thought was that somebody had opened the end-gate of his wagon and that what he saw was a bundle which had dropped out. Then on looking further he saw that it was a child and jumped out of his wagon as quickly as he could. The wagon had curtains on its sides which obstructed the view of the sides of the street, as in an ordinary delivery wagon. "You could see the street before you but you couldn't see around back. . . . You could see about at an angle of forty-five degrees toward the front." The wagon was a little lighter than an ordinary delivery wagon, had one horse—a gentle one—going in a walk. If there was a child or any one else on the steps of any of the houses along the street, or in the street, he did not see them. The day was clear and it was about five o'clock in the afternoon.

Young Lieberstein, about fourteen and a half years old, testified that he knew Dorothy, the plaintiffs' daughter. Witness was going along Burd avenue on the ·day of the accident about 4:30 or 4:40 in the afternoon and was on the west side of the street, going north; saw the laundry wagon belonging to defendant and saw that there was a boy he knew in the wagon with the driver. When he first saw the wagon it had stopped and was delivering some laundry; had stopped on the west side of the street and was going south. The driver turned the wagon around toward the north and then he saw the back wheel of the wagon run over the little girl. The witness, at the time, was throwing nails at the boy in the wagon. Witness was behind the wagon and did not see the driver at the time of the accident. The horse was moving at an ordinary walk. When the accident happened to the little girl, this witness was

about ten feet away. This was the testimony in chief of this witness. On cross-examination he testified that the driver of the wagon had delivered the package on the west side of Burd avenue, right opposite plaintiffs' residence. He stopped throwing nails at the boy in the wagon after the wagon turned; then he saw another boy that he knew and turned around to throw at him, and then, and as he turned back toward the wagon again, he saw the back wheel run over the little girl, or about to run over her, as he said, and saw it run over her; the back wheel on the right side of the wagon ran over her. The horse was going at a walk and stopped within about ten or fifteen feet after it had passed the child. Asked if he saw the driver pick up the child, he answered that the child got up after it was run over, tried to walk, ran a little way and fell down, and the witness ran over to her and picked her up, when the driver took her out of his arms and carried her into the house.

This is the testimony of the witnesses called and put on the stand by plaintiffs and they were the only eyewitnesses to the accident produced at the trial. Defendant introduced no witnesses but stood on its demurrer to the evidence.

Bringing their action for damages for the death of their daughter, plaintiffs, in their petition, after setting out the duty of defendant, through its agent in charge of the horse and wagon, to keep the horse under control and use ordinary diligence, caution and care while driving along the streets of the city, to watch out for pedestrians and to avoid striking and injuring men, women and children, charges that defendant's agent, in the course of his employment, was driving the horse and wagon northwardly along Burd avenue, and while the horse and wagon approached the point on Burd avenue where the child was lawfully walking across that avenue, "wholly disregarded his duties as aforesaid and failed to keep said horse under control

and failed to exercise ordinary diligence, caution and care to watch out for the safety of persons lawfully upon the street, and negligently and carelessly managed and drove his said horse and wagon at a high rate of speed, to-wit, at a rate of speed exceeding ten miles an hour, causing and suffering said horse and wagon to run against and collide with the body of said Dorothy M. Frank, throwing her against the ground and street with great force and violence, crushing and mangling her body and inflicting severe and mortal injuries upon her body, from the results of which she died on the said 28th day of July, 1911.''

The answer was a general denial.

A consideration of the evidence in the case, and we have given a summary of all of it, as detailed by eyewitnesses called by plaintiffs themselves, demonstrates beyond question that the horse and wagon were not being driven at an extraordinary or unlawful rate of speed. The evidence is conclusive as given by plaintiffs' own witnesses, that the horse was proceeding at a walk—a slow walk—so that averment of negligence is out of the case, as is the accompanying averment that the driver had failed to keep the horse under control while driving along the street.

That leaves as the remaining ground of negligence, the alleged failure to exercise ordinary diligence, caution and care in watching out for the safety of persons lawfully upon the street, in effect, that defendant's driver saw, or by the exercise of reasonable care, could have seen the deceased in a position of peril in time to have avoided striking her.

We are compelled to hold, on thoughtful consideration of the evidence in the case as touching this assigned act of negligence, that the evidence does not sustain it.

It must be borne in mind that all the evidence as to the happening of this accident came from plaintiffs' own witnesses.

Judge LAMM, speaking for our Supreme Court in Rodan v. St. Louis Transit Co., 207 Mo. 392, l. c. 408, 105 S. W. 1061, has laid down the law which is controlling as to testimony of like character, saying: "One may not drink from a spring and then roil it, or from a pitcher and then break it. If A put B on the stand and prove by him a certain state of facts, this does not preclude A from putting C, D or E on the stand and proving a different state of facts; but if A puts B on the stand as his only witness to prove a fact, and does prove it, then he is precluded from impeaching B, or from otherwise inciting the jury to disregard B's testimony. He may not avoid his dilemma in that way."

Accepting the testimony of the witnesses produced by plaintiffs themselves, as it must be under the above ruling of our Supreme Court, it is impossible to draw any conclusion from it of carelessness, negligence or want of care on the part of the driver. The mere fact that the child was run over and killed by a wagon in charge of defendant's driver will not in itself warrant a recovery. There must be proof of negligence on the part of the driver to sustain the action. [See Parsons et ux. v. Yeager Milling Co., 7 Mo. App. 594; Mascheck v. St. Louis Railroad Co., 71 Mo. 276, l. c. 277; Lee v. Jones, 181 Mo. 291, 79 S. W. 927.]

In this latter case, Judge VALLIANT has said (l. c. 297): "The plaintiff's right to recover depends on proof of the allegation that the defendant was guilty of negligence. What proof was there to sustain that. allegation? The law does not draw an inference of negligence from the mere fact that there was a collision in which the plaintiff was hurt. [Yarnell v. Railroad, 113 Mo. 570; Carvin v. St. Louis, 151 Mo. 334.] Nor does the fact that the plaintiff was a child and the defendant a man shift the burden of proof from the plaintiff to the defendant to show which, if either of them, was to blame for the accident."

190MA6

In Hight v. American Bakery Co., 168 Mo. App. 431, l. c. 459, 151 S. W. 776, we held that a driver in charge of a team was not required to look behind him to see if any accident was liable to happen after his vehicle had passed; that his duty is to look in the direction in which he is moving, and guard against running over any one in the danger zone.

In McNamara v. Beck, 21 Ind. App. Ct. Rep. 483, where the facts in evidence are very much like those at bar, the practice in that State providing for special verdicts, it is said by the court (l. c. 485): "In this cause it is necessary that the verdict should show, not only that the appellant was an infant of such tender age that it would be *non sui juris*, and hence the court would not predicate negligence upon its own conduct, but it is just as important and material that the verdict also find facts from which the court could, as a matter of law, adjudge appellee guilty of negligence which was the proximate cause of appellant's injury. Appellant, even though *non sui juris*, cannot recover unless it be shown that the injury was the direct result of the negligence of appellee."

According to the evidence in the case the last seen of this poor little girl before the happening of the accident was when she was left on the porch of her home, that porch or the steps of it on a line with the sidewalk or pavement. No one saw her leave the porch or pavement, or in the street until after the horse and front wheels of the wagon had passed and she was between the front and rear wheels and directly in front of the moving rear wheel. No one in fact saw her from the time she was left on the porch until she was between the front and rear wheels of the wagon and had been knocked down by the real wheel and run over. The wagon was closed on the sides with curtains. The driver was looking to the front, as it was his duty to do. He testifies that he did not see the child in front of him or on the street. The boy in the wagon testi-

fied that he saw no one in the street in front of the wagon or near it. The testimony as to this is positive by the driver himself, called as a witness by the plaintiffs. The testimony of the two boys is to the same effect. Apparently the poor little girl, only two and a half years old, had run down from the steps of the porch upon which she was sitting and over a space of about four, or possibly a few more feet directly after she had been left there, and was opposite about the middle of the wagon, and so out of view of the driver. Under this state of facts, under the evidence in the case, and under the decisions, it is impossible to hold defendant liable for this unfortunate accident. It is the settled law of this State that where an injury may have happened from one of two causes, for one of which and not the other the defendant is liable, the burden is cast upon plaintiff to show, with reasonable certainty, that the cause for which the defendant is sought to be charged with liability, was the producing cause, the direct cause of the accident. If the evidence leaves that cause to conjecture appellant cannot recover. So it is here.

The result is that the judgment of the circuit court in this cause must be and is reversed. *Nortoni* and *Allen, JJ.,* concur.