BLAZIC, by her next friend, Respondent, vs. FRANZWA, Appellant.

*December 5, 1922—January 9, 1923.*

*Automobiles: Negligence: Collision with pedestrian at street intersections: Question for jury.*

1. Testimony as to the distance traveled by an automobile after a collision is *held* insufficient to justify a finding that the speed was excessive, where the undisputed testimony of four witnesses, three of whom were disinterested, was that the car was being driven at a very moderate speed.

2. In an action against an automobile driver who had halted to the north of an intersecting street because of the course of the traffic, and, when it turned, crossed the street and collided with plaintiff, a twelve-year-old girl who was hurrying across the south side of the intersecting street, the evidence is *held* not to show that defendant was negligent either in failing to keep a proper lookout or in not sounding his horn.

3. Questions of negligence arising out of automobile accidents, where there is usually a close conflict in the evidence, are peculiarly for the jury, whose province it is to pass upon the credibility of the witnesses.

4. In automobile accident cases, as in other cases where negligence is relied on, it should appear that there has been an omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or that something has been done which a prudent and reasonable man would not do; and the charge of negligence should be established by the party asserting it by a preponderance of the evidence.

CROWNHART, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Reversed.*

Action to recover damages for injuries received by a twelve-year-old girl as a result of being struck by an automobile. Twelfth street is a highway in the city of Milwaukee extending in a northerly and southerly direction. Vliet street intersects it at right angles. The traffic at the time of the accident, about 6 p. m., was rather heavy.

Plaintiff was proceeding west on the south side of Vliet street. When she reached the east curb of Twelfth street she looked to the right and left and then walked hastily across the street, making no further observation. It appears that when she began to cross, the traffic was going east and west on Vliet street, but that before she completed the crossing this traffic gave way to that going north and south on Twelfth street. Defendant, driving a Ford coupé, was the first to drive south after the line of traffic had turned. The accident occurred a few feet from the west curb of Twelfth street. Plaintiff was thrown to the pavement under the car but was not touched by the wheels.

There was evidence to the effect that it was dark and rainy; that plaintiff was dressed in dark clothing and carried a violin case and an umbrella; that her vision was defective and that she had removed her glasses because the rain clouded them. It was shown on behalf of defendant that the lights of the car were burning; the wind-shield was open because of the rain; and that he was not traveling in excess of ten miles an hour.

In a special verdict the jury found the defendant guilty of negligence; the plaintiff free from contributory negligence; and awarded damages in the sum of $250. Plaintiff Paul Blazic was awarded $22.25 by the court.

For the appellant there was a brief by *Schoetz & Williams* and *Alfred R. Gandrey,* all of Milwaukee, and oral argument by *Mr. Gandrey* and *Mr. Clifton Williams.*

For the respondent there was a brief by *Joseph A. Padway* and *A. L. Skolnik,* both of Milwaukee, and oral argument by *Mr. Skolnik.*

JONES, J. The following were allegations of negligence charged in the complaint:

"That due to the operation of said automobile at a great and unlawful rate of speed, without keeping a proper lookout, without having the same equipped with proper stopping

appliances, and without giving a horn or other warning of his approach, and in violation of the rules of the road, caused said automobile to run into and collide with the plaintiff, throwing her to the pavement, and seriously injuring her. . . ."

It is an unusual feature of this case that there is very little conflict in the testimony as to the manner in which the accident occurred. None of plaintiff's witnesses testified as to the speed of the car. One of defendant's witnesses, a policeman, testified that the car was not going very fast. Another policeman said it was going "about eight or nine miles at the very most." Defendant testified:

"I was going about eight miles an hour as I was crossing Vliet street coming to the south sidewalk line of Vliet street, and positively not to exceed ten miles an hour."

Another witness who was in the car with defendant stated that the speed did not exceed ten miles per hour. The only testimony on which a finding could possibly be based that there was excessive speed was that which related to the distance traveled by the car after the collision. On this subject the only testimony on behalf of plaintiff was her own, and she said that the distance was about ten feet. One of the policemen said:

"The machine did not run very far after it struck the girl because the rear end of it was only about four or five feet from her body when she got up, and the outside of the machine from the curb line might have been seven or eight feet, because Twelfth street is not very wide there."

The defendant estimated the distance at ten feet. The witness who was riding with defendant leaped out when the plaintiff appeared in front of the car and went to her assistance at the same time as one of the policemen. This witness did not state the distance traveled after the accident. One of the policemen estimated the distance traveled after the collision at from ten to fifteen feet.

It is not strange that there should be some uncertainty as to the exact distance. The night was dark; the pavement was wet and slippery; no measurement was made, and the defendant after the collision guided the car to the curb, where he stopped. Testimony as to the physical facts occurring after a collision, in connection with direct testimony as to the rate of speed, may be quite significant. But it is not easy to determine the exact distance within which one using ordinary care should stop a car in the nighttime on a slippery street in the excitement and confusion of a collision.

In this case there was the undisputed testimony of four witnesses, three of whom were disinterested, that at the time of the accident the car was being driven at a very moderate speed. In the face of this positive testimony we do not think that the jury were justified in concluding that the speed was excessive from the mere physical facts relied on. Such a conclusion would rest too much on conjecture and guesswork.

Another ground of negligence relied on was that defendant kept no proper lookout. Undoubtedly it was his duty to look ahead and to use ordinary care to avoid accident. He had used the precaution to open the wind-shield so that notwithstanding the rain there might be an unobstructed view. There is no testimony on behalf of plaintiff that there was not a proper lookout unless it be the fact of the collision itself. Defendant and the witness with him swore that they were watching the street ahead and did not see the plaintiff until just as she was approaching the path of the left-hand light of the machine.

According to all the testimony the plaintiff left her companions behind and hurried very rapidly across the street. Although her sight was somewhat defective she said she could see, as the weather conditions were that day, "not quite a block." She did not see the approaching car with its headlights burning. In the night this was obviously an

object much more easily seen than the plaintiff hurrying across the street.

Counsel for plaintiff argue that one of the policemen on the sidewalk saw the plaintiff and hence she ought to have been seen by defendant. One of the policemen did not see her until she was struck, although he saw the auto approaching. The policeman whose testimony is relied on said:

"As Officer Ring and I were walking south, on the west side of Twelfth street, crossing Vliet street, this machine passed us, going south at about eight or nine miles an hour at the very most, when this little girl darted off the east curb and ran directly in front of the machine which passed over her,—none of the wheels striking her. She got up and staggered into the arms of Officer Ring."

If the plaintiff saw the car at all it was evidently the instant before the collision, and it was then that she was first seen by the defendant and the policeman.

As defendant came to the intersection he looked for cars which might be coming from the left and the right, as well as for pedestrians. He was going at a low rate of speed. On the undisputed testimony he applied the brakes on the instant that he realized there was danger. He had violated no ordinance or statute, as appeared in most of the cases cited by respondent's counsel. He had not sounded the horn, it is true, but for the reason that he had not seen the plaintiff, and as has frequently been held by this court there is no statute requiring it.

Bearing on the claim that it was negligence to fail to see plaintiff, the following extract from a late decision by Mr. Justice OWEN is quite pertinent:

"It will be observed that the plaintiff had as good an opportunity to discover the defendant's car approaching from the west as the defendant had to discover the presence of the plaintiff upon the crosswalk. According to plaintiff's testimony, no automobile passed in front of her to obstruct her view to the west, from which direction defendant's car was approaching. She testified that her sight

was good, and it is a physical certainty that if she had but glanced in the direction from which she was required to anticipate approaching traffic, after having passed the center of the street, she would have observed defendant's car in time to have avoided the accident.    Pedestrians cannot heedlessly cross busy city streets where automobiles and other traffic pass to and fro, without taking the least precaution to discover and avoid approaching vehicles.    To grant such immunity to pedestrians is inconsistent with the existence of equal rights and privileges and mutual duties and responsibilities which under the law belong and attach to contemporary users of the streets." *Brickell v. Trecker,* 176 Wis. 557, 559, 186 N. W. 593, 594.

It is earnestly contended by counsel for plaintiff that questions of negligence arising out of automobile accidents are peculiarly for the jury, and he cites *Shortle v. Sheill,* 172 Wis. 53, 178 N. W. 304; *Groeschner v. John Gund B. Co.* 173 Wis. 366, 181 N. W. 212; and *Cunnien v. Superior I. W. Co.* 175 Wis. 172, 184 N. W. 767.    This is true, but for the reason that in this class of cases there is usually a close conflict in the evidence and it is the province of the jury to pass upon the credibility of the witnesses.

The use of the automobile has brought into the courts a flood of litigation.    But excepting statutory regulations this use has not changed the well-established rules governing the law of negligence.    It has only made it necessary to apply those rules to new conditions.    In these cases as in others, if negligence is relied on it should appear that there has been an omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or that something has been done which a prudent and reasonable man would not do.    In these cases as in other cases of negligence it is necessary that the charge should be established by the preponderance of the evidence, and the burden of proof rests on him who asserts the negligence.    Applying these rules, we consider that there was not credible evidence to

sustain the finding of the jury that the defendant was guilty of negligence. *Brickell v. Trecker,* 176 Wis. 557, 186 N. W. 593; *Koperski v. Hoeft, post,* p. 281, 191 N. W. 571.

It was contended by counsel for defendant that the trial court should have held as a matter of law that there was contributory negligence. In view of the conclusion we have reached it is unnecessary to decide this question. It does not seem probable that any new evidence would be produced on a second trial, hence the complaint should be dismissed.

*By the Court.*—The judgment of the circuit court is reversed, with costs, and the cause is remanded with directions to dismiss the complaint.

CROWNHART, J. (*dissenting*). In *Warden v. Miller,* 112 Wis. 67, 87 N. W. 828, Mr. Justice DODGE said:

"It seems hardly necessary at this late day to reiterate the rule that a jury's conclusion, especially upon such a question as negligence, cannot be disturbed by this court if there be any credible evidence, which, in its most favorable view, to any reasonable mind, can support the conclusion reached. A conclusion of negligence, of course, involves a comparison of the conduct under consideration with the conduct of the great mass of mankind under like circumstances. This standard must rest in the experience and observation of the individual or individuals who are to make the comparison, and in the ordinary affairs of life it is beyond question that men selected from the various professions and employments of life to sit upon juries are quite as able to correctly form and apply that standard as are men whose experience is confined to a single profession."

Mr. Justice DODGE, speaking for the full court, thus happily, clearly, and comprehensively stated the law as it uniformly has been held by this court, but which has been avoided sometimes by the court looking at the facts from its point of isolation. This court gets none of the color that

Blazic v. Franzwa, 179 Wis. 260.

comes to the trial court and the jury from seeing the witnesses and hearing them testify. It is not acquainted with local conditions. It has not the same experience as has a jury selected from the vicinage. The jury is entitled to be held in high esteem, and its verdict given great weight. Since the act of 1897, ch. 176, jurors have been peculiarly the agents of the courts in administering justice. They are selected by sworn jury commissioners who are appointed by the circuit judges. The commissioners are required to select as jurors none but "citizens of the United States who are qualified electors of this state, who are possessed of their natural faculties, who are not infirm or decrepit, who are esteemed in their communities as men of good character, approved integrity and sound judgment, and who are able to read and write the English language understandingly." Sec. 2524, Stats.

This case was tried in one of the civil courts of Milwaukee specially created to dispense justice in small cases. A jury was had and its verdict was for plaintiff. A new trial was denied by the trial judge and judgment entered for plaintiff. From this judgment defendant appealed to the circuit court, where the proceedings were reviewed and the judgment affirmed. The verdict was for $250. This court now reverses the judgment below and orders judgment for defendant. I cannot concur.

The facts are simple. The plaintiff was a little girl of twelve. On October 17, 1921, she was walking west on the south side of Vliet street in Milwaukee. She came to Twelfth street at about 6:15 p. m. It was raining. The child had defective vision. She had removed her glasses because of the mist gathering on them. She was incumbered with an umbrella in one hand and a banjo case in the other hand. The traffic on both streets was heavy. As plaintiff came to the crossing she looked both ways and saw that the traffic was stopped on Twelfth street, which she had to cross, and the course of traffic was on her street.

She proceeded at a fast walk to cross. The street was wet and slippery. There were street-car tracks on the street. As she approached within four or five feet of the curb on the opposite side of the street from the point she entered, she was struck by an auto going south, knocked down, and run over. The machine passed clear over her body and some five feet or more beyond. It stopped twenty-five or thirty feet south of the south curb of Vliet street. Fortunately, the wheels straddled the body of the girl and a tragic death was averted. The defendant was a man of mature years, possessed of all his faculties, ensconced in a Ford coupé with the wind-shield open and the lights on. He had been held up on the north side of Vliet street by the traffic going east and west on that street. As the traffic turned, he started from a full stop, south on Twelfth street, across Vliet street. He sounded no alarm, and, as described, struck the little girl head on about the middle of the bumper, ran clear over her and five feet or more beyond, before he stopped. These are the physical facts, undisputed. The jury could have found that the place of accident was fairly light, and that the girl, with her signal of distress—the umbrella up—could be easily seen. From these facts the jury were required to draw the proper inferences and determine the ultimate question of negligence.

Reliance is had on *Brickell v. Trecker,* 176 Wis. 557, 186 N. W. 593. Without discussing that case, it seems plain that the opinion of the court in this case proceeds on a wrong theory. The theory is that the plaintiff had as good an opportunity to discover the defendant's car as the defendant had to discover the plaintiff. That is not the test of defendant's negligence. The courts have never consciously so held. The question of negligence, as Mr. Justice Dodge correctly held, "involves a comparison of the conduct under consideration with the conduct of the great mass of mankind under *like* circumstances." It would have been reversible error for the jury or the trial court to have applied

the test announced in the opinion here. The question for the jury was: Did the defendant exercise the care that the great mass of mankind would have exercised under like circumstances? Such a comparison involved the consideration of all the facts,—defendant being a man of maturity, possessed of all his faculties, seated in a closed car, windshield open, with the highway unobstructed before him, his lights on, and starting his car from a dead stop to cross a street in a crowded thoroughfare, sounding no horn, and shooting ahead with such speed and recklessness as to run down a little girl crossing the street. The child had the legal right to cross the street. She had the same right on the street as defendant. In considering defendant's negligence we may not judge it by what the child did or did not do. That involved the independent question of the child's negligence. The two propositions are separate. They were properly separately submitted to the jury. I am of the opinion that defendant's negligence was conclusively established. If such conduct as his does not make a case of negligence for the jury, then the little children who have to cross the streets in our large cities are in great danger. The opinion of the court suggests that "the use of the automobile has brought into the courts a flood of litigation." I would say it is not so much the use of the automobile that brings litigation,—rather it is the negligence of reckless drivers that brings about this condition. This court's approval, as a matter of law, of such driving as in this case I fear will add to the flood,—certainly it will add to the dangers of pedestrians, already too great.

It is not claimed in the opinion that the little girl was negligent. I do not think it could be so claimed in the face of the facts. That question was properly submitted to the jury, and it found her free from negligence.

For the reasons stated, I respectfully dissent from the opinion of the court.