WILCOX, APPELLANT, v. SMITH ET AL., RESPONDENTS.

(No. 7,568.)

(Submitted September 26, 1936. Decided November 4, 1936.)

[62 Pac. (2d) 237.]

*Mr. Henry McClernan* and *Messrs. Hall & McCabe,* for Appellant, submitted a brief; *Mr. Edward C. Alexander,* of Counsel, argued the cause orally.

186

*Mr. Louis P. Donovan,* for Respondent British-American Oil Producing Company, submitted a brief and argued the cause orally.

*Mr. E. K. Cheadle, Jr.,* for Respondent Consolidated Gas Company, submitted a brief and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action in damages for personal injury to the plaintiff alleged to have been sustained April 3, 1935, by reason of the reckless, careless and negligent driving of an automobile by the defendant Smith on the highway leading out of the city of Cut Bank to the north.

Smith was an employee of his codefendants in this action—the British-American Oil Producing Company and Consolidated Gas Company. The two corporations owned leases on adjoining lands some nine miles northwest of Cut Bank on each of which oil and gas wells had been developed, and Smith lived on one of the leases with his family and was in charge of the pumping of the wells for each of his codefendants. It does not appear that there were any affiliated interests between the two defendant corporations, but Smith was employed by both concerns to attend to the pumping and looking after the pumping equipment, and the two concerns also employed J. W. Johnston as their general field manager and superintendent. Johnston had an office at Shelby, Montana, and it was the usual daily practice for Smith to report to Johnston at Shelby relative to the production of the wells and any other matters pertaining to Smith's business. Such report was usually made about 1:30 in the afternoon of each day by 'phone from the office of the Toronto Pipe Line Company, located near respondents' leases.

On the morning of the date above mentioned, Smith drove by car into Cut Bank to take his son to school and to attend to other personal business, and remained in town for about an hour and a half. While in town he met and was advised by "Mr. Noah," the man in charge of the Toronto Pipe Line Company, that Johnston was trying to get him on the 'phone.

Smith advised Noah that he would call Johnston later and soon after left for home. Smith testified that he had in mind to find out what Johnston "had on his mind" when he made his daily report at 1:30; that Noah's advice about Johnston wanting to get him on the 'phone had nothing to do about his starting for home soon after he talked with Noah; that he "just went out because he was ready to go out." On leaving for home, and when about a mile and a half out of town and while passing a truck going in the same direction, Smith collided with the plaintiff, wrecking the car he was driving and sustaining personal injuries himself, and injuring the plaintiff, the plaintiff's wife who was riding in the car with the plaintiff, and damaging plaintiff's car. Smith was driving a borrowed car which belonged to an automobile sales agency located in Cut Bank and with which he was negotiating a deal for a new car. Smith testified that he used his old car, which he had already turned in to the sales agency, when he got the borrowed car, for the purpose of going from one well to the others in the course of his employment by the two respondent corporations. It appears, although the record is not very clear, that J. W. Johnston, Smith's immediate superior, was aware that Smith used his car in attending to his duties as the employee of the two respondents, but the respondents had nothing to do with maintaining the car, nor did they allow Smith any expenses in connection therewith. This phase of the matter will be later adverted to.

In addition to alleging the facts relative to the accident substantially as above, the complaint further alleges that at the time of the accident Smith was engaged within the scope of his employment as an employee of the two respondent corporations. The complaint sets up two causes of action, the first for injuries to the plaintiff and his wife based upon the cost of hospitalization and medical attention for each, and the second for damages to plaintiff's car.

Each of the three defendants answered separately, traversing all of the material allegations of the complaint, and each of the defendant corporations interposed an affirmative defense

founded upon alleged contributory negligence on the part of the plaintiff. Smith in answering, in addition to alleging contributory negligence, set up a counterclaim for damages for personal injury, and also for damages to the car he was driving. By reply the affirmative matter set up by the several defendants was brought in issue.

The issues were tried together by the court sitting with a jury. A number of witnesses were sworn and examined and proof on the part of the plaintiff was heard, and the plaintiff rested; whereupon both the defendant corporations moved the court for nonsuits which, after consideration, were granted.

In granting the motions for nonsuit the court at the time stated that it had in mind the following authorities: *Monaghan* v. *Standard Motor Co.*, 96 Mont. 165, 29 Pac. (2d) 378; *Stockwell* v. *Morris*, 46 Wyo. 1, 22 Pac. (2d) 189; *Harrington* v. *H. D. Lee Mercantile Co.*, 97 Mont. 40, 33 Pac. (2d) 553; *Susser* v. *Delovage*, 73 Mont. 354, 236 Pac. 1082; *Kennedy* v. *Union Charcoal & Chemical Co.*, 156 Tenn. 666, 4 S. W. (2d) 354, 57 A. L. R. 733, and annotation. We are satisfied, after reading and considering the decisions referred to by the court and many others along the same lines covering practically all the questions involved here, that the ruling of the court in granting the motions for nonsuit was correct; but counsel for the plaintiff so earnestly argue the questions involved that we deem it advisable briefly to consider the various contentions advanced.

The trial was proceeded with against the defendant Smith; the jury returned a verdict favorable to the plaintiff, and judgment was duly entered thereon. Smith did not appeal, and no further consideration will be given to any phase of the case in so far as it relates to the personal liability of Smith. This appeal is from the judgments of dismissal following the granting of the respondents' motions for nonsuit.

The assignments of error by the plaintiff all relate to alleged errors of the court in granting such motions. Plaintiff states in his brief that "the sole question here to be considered is whether the lower court erred in taking away from the jury

the question whether Smith, at the time of the accident, was acting within the scope of his employment.'' Counsel for plaintiff argue this question under the following headings: (a) Effect of motion for nonsuit; (b) when is a nonsuit proper; (c) agency of Smith; (d) joint liability of respondents.

Under the first heading counsel contend that a motion for nonsuit admits the truth of plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom, and cite numerous decisions from this jurisdiction to support their contention. With this contention of plaintiff we agree. The rule is firmly established.

Under heading (b), counsel cite *Stranahan* v. *Independent Natural Gas Co.*, 98 Mont. 597, 41 Pac. (2d) 39, 41, and quote therefrom as follows: ''On motion for nonsuit, no case should be taken from the jury when reasonable men may draw different conclusions from the evidence, or where there is substantial evidence to support the complaint, but only where from the undisputed facts the conclusion necessarily follows, as a matter of law, that a recovery cannot be had on any view which may reasonably be taken from the facts established.'' Counsel also cite and quote from other Montana decisions which are substantially to the same effect. This rule is likewise firmly established in harmony with plaintiff's contention.

Under heading (c), agency of Smith, counsel says: ''That Smith, at the time of the accident, was in the general employ of the two respondents is not disputed. It is also undisputed that the automobile involved in the collision was used by him in his work, either on the leases or on the trips between the leases and Cut Bank, which latter place he visited in the course of his duty.'' In order to conform to the facts as established by the record, the word ''general'' must be omitted from the first sentence of the above quotation. That word gives too broad a meaning to the scope of Smith's employment. His employment was confined to the pumping operations on the leased premises. He was employed to look after the production on the leases, and he testified as the witness for the plaintiff: ''My duties were confined exclusively to those two leases which were

situated approximately eight miles north and two miles west of the town of Cut Bank. * * * There was nothing about my duties on April 3, 1935, that required me to leave the leases; I refer to my duties to my employers.'' Neither does the record bear out the last sentence of counsel's statement, as it would appear from such statement that Smith was accustomed to drive his car to Cut Bank in the discharge of his duties and within the scope of his employment. It does appear that occasionally Smith purchased pumping equipment and repairs for the pumping machinery, and by implication it appears that he might have gone to Cut Bank or elsewhere to obtain such equipment and repairs, but everything else that he used in the way of gas and oil and such supplies were delivered to him by the respondents at his place of business on the leases. Any repairs or equipment for the pumps were purchased only on the instructions of J. W. Johnston, Smith's superior, and such purchases and any trips incidental thereto made off of the leases by Smith were not strictly within the scope of his regular employment; and there is nothing in the record to show that his trip to Cut Bank at the time the accident occurred had anything to do with his duties as an employee of the respondents, nor that he bought anything for his employers on that trip. On the contrary, he testified on cross-examination, at all times being the witness of the plaintiff, that ''the occasion of my coming to Cut Bank on the morning of April 3, 1935, was to bring my son to school. That was my sole business in making the trip; if I had not brought him I would not have come.''

In any event, the ownership of the car that Smith was driving at the time of the accident is immaterial here. Even if the car belonged to the defendant corporations, or either of them, it would be necessary to show that at the time of the accident Smith was acting within the scope of his employment. The established rule applicable here is reiterated in the case of *Monaghan* v. *Standard Motor Co.*, supra, where this court said: ''It is well settled that even though the driver of the car is a servant of the owner of the car, the owner is not

liable unless at the time of the accident the driver was acting within the scope of his authority and in regard to his master's business.''

After a careful analysis of the facts shown by the record and an examination of the applicable rules of law as gathered from numerous decisions, we conclude that the only question to determine here is whether or not the fact that Smith, as the employee of the defendants, in looking after the pumping operations on the leases, raises the presumption that he was in the line of such employment on April 3, 1935, when the accident occurred. We are of the opinion that no other question is involved here, and we are further of the opinion that the facts to support such presumption are of so little, if of any, evidentiary value, that no court would be justified in reversing a judgment on the strength of any such evidence.

A presumption founded on facts stronger in favor of the plaintiff, but similar to those involved here, arose in the case of *Monaghan* v. *Standard Motor Co.*, supra. There the driver of the truck was an employee of the owner and at the time of the accident the truck was loaded with crates on which the name of the owner of the truck appeared. It was held that proof of such facts was sufficient to raise the presumption that the driver was at the time of the accident within the scope of his employment, but it was held to be a disputable presumption, and, as it was shown that the truck was in use by the driver after the regular hours of his employment and the crates bearing the name of the owner were being taken to the driver's home for his own use, the presumption was overcome and the owner of the truck held to be not liable. The only evidence that could be said to give rise to such presumption here is that Smith, after having taken his son to school, met Noah in a pool hall in Cut Bank and was advised by Noah that Johnston had called Smith from Shelby and desired to get in touch with him by 'phone; that soon after receiving such advice Smith started home or to his place of employment. Counsel for plaintiff obviously assumes that that was sufficient

to give rise to the presumption that Smith was from thereafter and up until the time of the accident engaged within the scope of his employment. We find no other fact or circumstance that can be construed to give rise to such presumption, and the sufficiency of such fact or circumstance to give rise to the presumption is all the jury could have passed upon had the court submitted the case to the jury. For the jury to have decided such fact or circumstance in favor of the plaintiff, it would have had to disregard Smith's positive testimony about his business and purposes at Cut Bank as heretofore recited. Smith's testimony was not impeached in any vital particular. He was shown to be in error about the position of his car after the accident, but that question has no bearing here, and under the shock of such an accident one's memory is not always reliable. Smith's testimony was confirmed by the plaintiff wherein Smith stated that the plaintiff told him while in the hospital in Cut Bank, soon after the accident, that he (the plaintiff) was trying to get the ''choke'' to work on his car and did not see Smith at all; and in other particulars Smith's testimony does not appear incredible, and it was obviously so regarded by the trial court. Even if the jury had determined that Smith's testimony was unworthy of belief, in order to establish a case against the respondents, it was necessary for plaintiff to affirmatively show Smith to have been within the scope of his employment at the time of the accident, and all we have in the record to give color to that contention is the testimony about the telephone call. The purpose of Smith's going to Cut Bank on the morning of April 3, 1935, we think clearly established, and the facts about the telephone call and Smith's acts subsequent thereto furnish no evidence that may reasonably be said to have changed Smith's status from one engaged in matters of strictly private nature to the status of an employee of the respondents acting within the scope of his employment. Furthermore, the plaintiff made no attempt to show for what purpose Johnston made the telephone call to Smith; whether it related to respondents' business or not is left to conjecture.

We find no error in the record, and the judgment is therefore affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS, absent on account of illness, did not hear the argument and takes no part in the above decision.

Rehearing denied November 20, 1936.