CHRIS NISSEN AND CHRISTINE NISSEN, a Minor by her
Guardian ad Litem, CHRIS NISSEN, Appellants. v. JOHN
S. JOHNSON, Respondent.

No. 9785.

Submitted April 13, 1959. Decided May 4, 1959.

As Amended on Denial of Rehearing June 9, 1959.

339 Pac. (2d) 651.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES, dissented.

Jess L. Angstman, Havre, for appellants.

Jess L. Angstman argued orally.

Hauge & Hauge, Havre, for respondent.

Lester N. Hauge argued orally.

THE HONORABLE VICTOR H. FALL, District Judge (sitting in place of MR. JUSTICE ANGSTMAN):

The subject matter of the action here involved is a claim for damages brought by plaintiff's guardian ad litem for injuries received by the ward, Christine Nissen, a minor, who on the date of the accident, April 24, 1955, was five years of age. The injuries were the result of her being struck by an automobile driven by the defendant along Tenth Street in the City of Havre, Montana. The evidence discloses that the plaintiff, Christine Nissen, was standing along the edge of Tenth Street, across from a playground, as the defendant was driving his car in a westerly direction and as he approached the place where the little girl was standing, she ran across the road in front of him with the result that she was struck and injured. The appeal is by the plaintiff from a judgment in favor of the defendant entered after sustaining defendant's motion for nonsuit made at the conclusion of the plaintiff's case.

The only negligence charged against the defendant was that he, ''John S. Johnson carelessly, negligently, unlawfully, recklessly and at an excessive rate of speed, drove, managed and operated his automobile to-wit * * *'' The sole question before the court is whether a prima facie case was made out on behalf of plaintiff against the defendant on this one charge of negligence.

The statutes in Montana, in force at the time of the acci-
dent, relating to speed were as follows:

Section 32-1101. "Speed regulations. Every person oper-
ating or driving a vehicle of any character on a public high-
way of this state shall drive the same in a careful and prudent
manner, and at a rate of speed no greater than is reasonable
and proper under the conditions existing at the point of opera-
tion, taking into account amount and character of traffic, con-
dition of brakes, weight of vehicle, grade and width of high-
way, condition of surface, and freedom of obstruction to view
ahead, and so as not to unduly or unreasonably endanger the
life, limb, property, or other rights of any person entitled to
the use of the street or highway; provided, however, that cities
and towns may, by ordinance, regulate speed and traffic upon
the streets within the incorporated limits."
and

Section 31-107. "Speed limits—establishment of speed zones
and penalties. No person shall drive a motor vehicle on a pub-
lic highway of this state at a speed greater or less than is
reasonable and prudent to conditions then existing."

The former section was amended by the enactment of Chap-
ter 263 of the Laws of 1955, which became effective July 1 of
that year and hence our present statute was not in effect at
the time of the accident. However, in this connection it should
be pointed out that the opening paragraph of section 41, Chap-
ter 263 of the Laws of 1955, at page 639, now section 32-2144,
the present statute, is identical with the opening paragraph
of section 32-1101, quoted above, so that insofar as this appeal
is concerned we are confronted with the same statutory law.

It will be seen from an examination of the foregoing stat-
utes that the actual miles per hour a person is driving is not
determinative of whether the motorist is negligent, but rather
the question is one of fact as to whether he was driving as a
reasonable and prudent person would drive under the condi-
tions existing and with a due regard for the "life, limb, prop-

erty, and other rights of any person" entitled to the use of the highway.

The evidence introduced at the trial was rather brief. From ▮ the record made, we learn that about 4:30 p.m., April 24, 1955, the defendant, a locomotive engineer, was driving his 1951 DeSoto automobile westerly on Tenth street in Havre, Montana. Tenth street, in the area surrounding the scene of the accident, passes through "prairie" and "there's nothing to mar the view of a person driving an automobile up that highway. There's no obstruction at all." The defendant, when testifying, stated, among other things, "I could see the highway plainly," and "when I was approaching I had a clear view." The defendant's car was in good condition and he stated "the brakes were perfect." He was not "speeding" in the ordinary sense of the word. He saw the little girl standing by the south side of the highway when he was "maybe 100 or 150 feet" away. At that time he thinks he was driving about 22 miles per hour. Upon observing the little girl he "did slow down from the speed I was going at that time." She ran across the highway in front of him, and the defendant was unable to stop in time to avoid striking her. The car left "quite visible" skid marks which measured 29 feet. Immediately to the north, across the highway from where the defendant first saw the little girl, is a playground. As a result of being struck the child suffered a fractured femur and multiple bruises. The femur break proved to be rather serious, necessitating an operation, and she was in the hospital some 25 days. However, there was complete recovery and no residual disability was either claimed or proved. The doctor bill amounted to $375, and the hospital bill was $428.75.

It is recognized that the mere fact that the defendant's automobile ▮ struck and injured the little girl does not of itself show negligence or contributory negligence. Johnson v. Herring, 89 Mont. 420, 300 Pac. 535; Autio v. Miller, 92 Mont. 150, 11 Pac. (2d) 1039; Cowden v. Crippen, 101 Mont. 187, 53 Pac. (2d) 98.

It is the law in Montana that a person is presumed to see that which he could see by looking. Autio v. Miller, supra. Further, it is the duty of a motorist to look not only straight ahead but laterally ahead and to keep a lookout and see that which is in plain sight. Johnson v. Herring, supra; West v. Wilson, 90 Mont. 522, 4 Pac. (2d) 469; Autio v. Miller, supra; McNair v. Berger, 92 Mont. 441, 15 Pac. (2d) 834; Marinkovich v. Tierney, 93 Mont. 72, 17 Pac. (2d) 93; Sorrells v. Ryan, 129 Mont. 29, 281 Pac. (2d) 1028.

If a motorist does not keep a proper lookout a jury may find that he was negligent.

No case should be taken from a jury on a motion for nonsuit where there is substantial evidence to support the complaint but only where from the undisputed facts it appears as a matter of law that recovery cannot be had on any reasonable view of the established facts. This rule of law is established in Montana and some of the cases supporting it are: Cain v. Gold Mountain Mining Co., 27 Mont. 529, 71 Pac. 1004; Ball v. Gussenhoven, 29 Mont. 321, 74 Pac. 871; Conway v. Monidah Trust, 52 Mont. 244, 157 Pac. 178; McIntyre v. Northern Pac. R. Co., 56 Mont. 43, 180 Pac. 971; Stevens v. Hines, 63 Mont. 94, 206 Pac. 441; Johnson v. Herring, supra; Autio v. Miller, supra; Miller Ins. Agency v. Home Fire etc., Ins. Co., 100 Mont. 551, 51 Pac. (2d) 628; Wilcox v. Smith, 103 Mont. 182, 62 Pac. (2d) 237; Lewis v. New York Life Ins. Co., 113 Mont. 151, 124 Pac. (2d) 579; Hage v. Orton, 119 Mont. 419, 175 Pac. (2d) 174; Donathan v. McConnell, 121 Mont. 230, 193 Pac. (2d) 819.

From the record made here the jury might have concluded that the defendant was negligent in not having his car under such control that he could have stopped in time to avoid striking the little girl. He saw her alongside a highway across from a playground toward which she may well have been going. He saw her in sufficient time that, according to the testimony, he could have stopped his car without difficulty and without leaving any skid marks. Whether under the circumstances

present the defendant was negligent appears to be a fact question and fact questions must be submitted to a jury under appropriate instructions. Nothing herein said is to be construed as any indication that this court feels that plaintiff herein should recover damages, and a jury may well absolve the defendant from any liability but it does appear that plaintiff is entitled to have his case go to a jury.

The judgment is reversed and a new trial granted.

MR. JUSTICES ADAIR and BOTTOMLY, concur.

MR. CHIEF JUSTICE HARRISON (dissenting):

I dissent and I shall do my best to adhere to the admonition of a former Associate Justice of this court, the Honorable Ralph J. Anderson, as expressed in Atlantic-Pacific Oil Co. of Montana v. Gas Development Co., 105 Mont. 1, 30, 69 Pac. (2d) 750, 761, wherein he said: "The utility of a dissenting opinion has long been doubted. The chief beneficiary of their promulgation is the public printer, and thereby an additional burden is placed upon the taxpayer and the buying public. Bearing these conclusions in mind, I shall record my views as briefly as possible."

I agree that the sole question before the court is whether or not the defendant "carelessly, negligently, unlawfully, recklessly and at an excessive rate of speed, drove, managed and operated his automobile" on Tenth Street in Havre, Montana, and struck the plaintiff, Christine Nissen. The majority opinion has set forth the applicable law for the most part, but I cannot concur in the interpretation of the facts as set forth therein.

At the conclusion of the plaintiff's case a motion for nonsuit was made by the defendant upon the ground, among others, that the plaintiffs had failed to establish any act or acts of negligence on the part of the defendant which were the proximate cause of the injuries sustained by Christine Nissen. At the time this motion was made upon the record before

the district court it was well taken. It is further apparent from the record that plaintiffs were relying upon what they termed a presumption of negligence by reason of the skid marks of 29 feet. The district judge aptly described the condition of the record at that time when he told counsel for the plaintiffs: "Just because the thing happened, it doesn't have to be negligence. The burden of proof is on you to show negligence. I haven't heard one word yet as to any negligence at all, except the man hit the girl. That doesn't raise any presumption at all." Plaintiffs then moved to reopen their case so they might be permitted to introduce further evidence. This motion was granted by the court and the father of the child was recalled and testified that he lived about a block and a half south of where the accident happened; that on the north side of the road there was a playground; that the contour of the area was prairie, and "There's nothing to mar the view of a person driving an automobile up that highway. There's no obstructions at all." Plaintiffs then called the defendant as their own witness and he testified as related in the majority opinion and in addition thereto with regard to the playground he stated that he had not been over the road at that time for two or three months and in response to the question:

"Did you know that there was—what was on the north side of the road? A. If you are referring to the playground, it wasn't there the last time I was over the road. It wasn't there then. There were no signs there to indicate it was a playground. There was nothing there to indicate or to inform you there was a playground there. *I knew nothing about it.*

"Q. Did you see any swings up on the north side of the road? A. I did later on when we went out to inspect the skid marks, *but you couldn't see them very well from the highway there. They are quite a distance from the highway. Unless you were looking for them, you wouldn't see them.*" Emphasis supplied.

With regard to the happening of the accident, defendant, as plaintiffs' own witness, further testified:

336.

"Q. Now was there a lot of traffic on that road that afternoon? A. Several cars passed back and forth. * * *

"Q. Now when did you first see this little girl crossing the highway? A. The first I seen the little girl crossing the highway was when I was about a distance of the skid marks from her, which I would say was 18 feet, 6 inches according to the skid marks.

"Q. You have measured your car to know— A. 10 feet and 6 inches is the wheel base of the car."

While the testimony shows the skid marks were 29 feet in length, the defendant's car had four wheel brakes and since the testimony shows that the brakes were in perfect condition all four would set upon application, thus to determine the length of movement of the car from the time of the application of the brakes it would be necessary to deduct the length of the car, leaving the forward motion after application of the brakes, under the testimony in this case, a distance of 18 feet, 6 inches. Defendant further testified that when he was going up a hill near the Deaconess Hospital, which plaintiffs allege in their complaint to be approximately 3/10ths of a mile east of the site of the accident, he noted his speedometer and at that time he was going about 22 miles per hour; that at the time of the accident he had slowed down to approximately 15 miles per hour.

Defendant's testimony, while a witness for the plaintiffs, as to the cause of the accident, is as follows:

"Q. And you say you didn't see this little girl until she was on the highway? A. Yes, when I was a short distance away. I wouldn't—I couldn't exactly say how far, maybe several car lengths away and this little girl was standing beside the highway.

"Q. You saw her standing there? A. She seemed to be standing beside the highway. I don't know whether she was playing or standing there.

"Q. Did you slow down? A. I did slow down from the speed I was going at that time.

"Q. But you didn't stop? A. There was nothing on the highway to stop for. There was no indication that the child was going to go on the highway.

"Q. You mean, then, that all of a sudden she just darted across the highway? A. *All of a sudden, yes. There was another car that passed me, my car, and he was going toward Havre. He passed me and just about or a little bit after or before I reached the point where the little girl was standing and immediately when that car passed, the little girl just darted across the highway and it happened so quick."* Emphasis supplied. (This testimony of the approaching car is entirely overlooked in the statement of facts contained in the majority opinion.)

"Q. You didn't stop? A. Yes, I stopped immediately. I stopped before I ran over the little girl, and the bumper knocked her down on the pavement in front of the car about two feet in front of the wheel where she was laying when she fell on the pavement and the car stopped. If I hadn't stopped, I would have run over her. I stopped just practically at the time I hit her and knocked the little girl down on the pavement. I did not run over her.

"Q. You didn't knock her out of the way? A. No, she was right in front of the car. I seen the little girl dart across the road immediately after this other car passed."

This is the testimony in plaintiff's case to establish the negligence of the defendant.

Plaintiffs called Haston Broadus, a highway patrolman, in an attempt to establish stopping time at certain rates of speed and how fast a car would be traveling to leave a skid mark of 29½ feet. It should be noted that the policeman who measured the skid marks and testified on behalf of the plaintiffs stated the skid marks measured 29 feet. Broadus testified that a car traveling 15 miles per hour on a good road surface with brakes in good shape should be able to stop within at least 37 feet; that stops could be made sooner than that; and that such figure was set up for the average braking distance. After stating it

was difficult to determine exact speeds by braking marks, that it depended a lot on the amount of pressure that is applied to the brakes, that he would say an actual skid mark of 29½ feet would indicate a speed of possibly 30 miles per hour, but added "I would not know." In response to the question: "But it would be in excess of 15 miles per hour, wouldn't it?" he answered: "I would certainly imagine it would be."

· Upon cross-examination a copy of the Driver's Manual was produced, which the witness admitted indicated that at 20 miles per hour the stopping distance would be 21 feet; that at 30 miles per hour it would be 80 feet; that the actual braking distance at 30 miles per hour would be 47 feet. He was then asked: "Now I ask you whether or not you could have been mistaken when you said 29 feet of skid marks would indicate 30 miles per hour? A. It is possible, I could have been. Q. Do you think the speed would have been less? A. I wouldn't know. It is possible." His further testimony indicates to my mind that he could not reconcile his statements on direct examination with the formulas contained in the Driver's Manual, and that his testimony is worthless.

To my mind the facts in this case disclose defendant Johnson driving westerly on Tenth street at a reasonable speed, noticing ahead of him at a distance of 100 to 150 feet, a child standing beside, *not on,* the street; that he slowed down though nothing about the situation caused him to believe the child was going upon the street; that as he proceeded at his reduced speed a car approached him from the west, traveling easterly, and immediately after the car met and passed him the child darted from the south side to the north side in front of his car; that he immediately applied his brakes and struck the child, knocking her down in front of his car but did not run over her. He picked up the child, took her in his car to her home, contacted her father and drove the child and father to the hospital. Counsel for plaintiffs contend he should have stopped his car when he observed the child off in the distance and failure to do so should be classified as negligence. Every person who

drives an automobile upon a highway observes children beside the roadway, walking or playing, and were he to stop and inquire of each child whether or not he was going to dart out into the roadway no person could proceed even at the slowest of speeds in a motor vehicle.

The majority opinion states that "* * * and no residual disability was either claimed or proved." In the complaint the father of the child, Chris Nissen, asked for damages in the sum of $1,500 for distress of body and mind and mental anguish. He testified that he thought this was a fair amount to compensate him for what he had gone through, the mental anguish and distress; that his daughter was in the hospital for 25 days and he went to see her all the time that he possibly could; that he stayed there lots of nights; that he had to quit one job and he laid off at the Great Northern about 4 days so he could be with his daughter.

In the complaint it is alleged that the child suffered distress in body and mind, pain and mental anguish, and prayer was made for damages in the sum of $7,500. While it is true that the doctor testified that the fracture had healed and she had good results and he was satisfied with them, he also testified that an operation was required to set the fracture and a steel pin was inserted in the shaft of the femur, which required two incisions; that she was in the hospital from April 24 to May 19 and was readmitted to the hospital on December 22 and the steel pin was removed from the shaft in the bone. During the direct examination of Chris Nissen he stated the girl had scars on her body and the scars were exhibited to the jury. He further testified that her hip and leg had been disfigured and that he thought $7,500 was a fair amount to ask as damages.

With this testimony before the jury, in my opinion, the avenue was open for an award of damages up to the amounts prayed for. The majority opinion, to my mind, makes it appear that the only damages claimed in the action were to cover the doctor and hospital bills, whereas as hereinbefore set forth had

this case gone to the jury they could have returned a verdict not only for the doctor and hospital bills, but for damages up to the amounts prayed for in the complaint.

This was an unfortunate occurrence and I am very sympathetic with the little girl who was injured, with her father who has been forced to incur the expenses indicated by the record in this cause. However, in my opinion, the district judge was correct in taking the case from the jury and granting a nonsuit. I fail to see any negligence on the part of the defendant and feel that he acted as any reasonable and prudent man would have done under the same or similar circumstances. The statement of this court in Johnson v. Herring, 89 Mont. 420, 425, 300 Pac. 535, 536, appears to me to sum up my views in this matter, and it reads:

"The mere fact that a motor-driven vehicle comes in contact with a pedestrian, to the injury of the latter, raises no presumption of negligence on the part of the driver of the vehicle; in such a case the right to recover damages for the injury inflicted on the pedestrian depends upon proof of the allegation, necessary in the complaint, that the driver of the vehicle was guilty of negligence proximately causing the injury. McAvoy v. Kromer, 277 Pa. 196, 120 A. 762; Blazic v. Franzwa, 179 Wis. 260, 191 N.W. 572. Nor does the fact that the injured person was a child of tender years, and the driver a man, shift the burden of proof as to the proximate cause of the accident (Frank v. Free, 190 Mo. App. 73, 175 S.W. 217), although the age of the child may bar the defense of contributory negligence."

I do not believe that the plaintiffs have sustained the burden of proof. As this court said in Lesage v. Largey Lumber Co., 99 Mont. 372, 385, 43 Pac. (2d) 896, 902: "Plaintiff had the burden of proving negligence as alleged, by a preponderance of the evidence, and an inference of negligence cannot be drawn from the bare fact that an injury has occurred. Lyon v. Chicago, M. & St. Paul R. R. Co., 50 Mont. 532, 148 Pac. 386. Proof of negligence must not be left to mere speculation

or conjecture. West v. Wilson, 90 Mont. 522, 4 Pac. (2d) 469.''
I would affirm the judgment of the district court.

MR. JUSTICE CASTLES:

I concur in the dissenting opinion of MR. CHIEF JUSTICE HARRISON.