## THE MENOMINIE.

*(District Court, D. Minnesota. September 8, 1888.)*

1. **MARITIME LIENS—STATE STATUTES—CONSTRUCTION.**
    Gen. St. Minn. 1878, c. 83, § 1, providing that every boat or vessel navigating the waters of the state is liable for all debts contracted by the master, owner, etc., on account of supplies furnished, work done, or services rendered for the benefit of such boat or vessel, or on account of labor done or materials furnished by mechanics, tradesmen, or others in building or equipping the same, creates a lien on the boat or vessel in favor of the claims named, though it does not in terms declare that they shall be liens.

2. **SAME—PROCEEDINGS IN REM—CONSTITUTIONAL LAW.**
    While section 2 of such chapter authorizing the enforcement of the lien by a proceeding *in rem* in the state courts is unconstitutional, section 1, creating the lien, is not thereby rendered inoperative and void, as the lien may be enforced in the courts of admiralty

3. **SAME—STATUTE—REPEAL.**
    Such section 1 is not repealed by Gen. St. 1878, c. 90, providing that whoever performs labor or furnishes materials or machinery for constructing, altering, or repairing any boat or vessel, by virtue of a contract with the owner or agent thereof, shall have a lien on the boat or vessel, etc., as the latter statute does not expressly repeal the former, and is not inconsistent with it.

4. **SAME—LIMITATION OF ACTIONS—APPLICATION TO FEDERAL COURTS.**
    The provision of chapter 83 which requires a proceeding for enforcement of the lien to be brought within one year after the cause of action accrued, applies to proceedings in the United States as well as the state courts.

5. **SAME—PRIORITY—ADMIRALTY RULE.**
    A state cannot by legislation control the rule to be followed by the courts of admiralty in distributing the proceeds of boats and vessels sold under admiralty process; but, when liens are created by a state statute, the court of admiralty will recognize such liens, and assign them to the class to which they belong under the maritime law of priority, where they will share equally with other liens of the same class, whether arising by statute or by the law maritime.

6. **SAME—ADVANCES—TO PROCURE BOAT'S RELEASE.**
    Where a libel for supplies furnished has been filed, and the boat seized in a foreign port, a person furnishing to the master money necessary to release the boat is, in the absence of fraud, entitled to a lien on the boat for the money advanced

In Admiralty.   On exceptions to master's report.

*Fayette Marsh*, for libelant.

*Fouke & Lyon*, for E. M. Dickey Company, intervenors.

*Henderson, Hurd, Daniels & Kiesel*, and *H. C. James*, for Knapp, Stout & Co. Company.

*Lawler & Durment*, for Rhodes and others.

SHIRAS, J.   1. The questions presented by the record in this cause, both of law and fact, are numerous, and in many instances difficult of solution.   The master to whom the cause was referred has given to all the questions arising on the record very careful consideration, and by the very clear and able statement of his findings and conclusions, set forth in his report, has greatly lessened the burden that would otherwise have been imposed upon the court.   Exceptions to the report have been filed on behalf of several parties, which require for their decision an examination and determination of several mooted questions arising under the maritime law and the statutes of the state of Minnesota.   The steamer Menominie was formerly owned by the Knapp, Stout & Co. Company, a corporation organized under the laws of the state of Wisconsin, but doing business also in the state of Iowa, in which state part of the company's officers resided.   The boat was enrolled at Dubuque, Iowa.   Subsequently a contract for the sale thereof was entered into between the Knapp, Stout & Co. Company and the Matt Clark Transportation Company, a corporation organized under the laws of the state of Minnesota, and located at the town of Stillwater.   By the terms of the contract of sale, which was duly recorded in the office of the surveyor of customs at Dubuque, Iowa, the title remained in the Knapp, Stout & Co. Company until the purchase price was fully paid, which has not yet been done, but the possession and full control of the vessel was delivered over to the Matt Clark Transportation Company.   The several claims of the seamen, material-men, and others, now in controversy, arose after the delivery of the boat to the transportation company, and while it was engaged in the business of that company.   The master finds, under the facts shown in his evidence, that the boat must be deemed to have been the property of the transportation company, and its home port to have been in the state of Minnesota at the time the claims of the several libelants herein arose, and in this finding I concur.

It further appears that supplies were furnished and labor done upon this vessel at its home port, and the question arises whether the creditors have a lien therefor upon the vessel.   The labor and material being furnished at the home port, a maritime lien therefor does not arise.   *The Lottawanna*, 21 Wall. 558; *The Albany*, 4 Dill. 439.   If a lien exists, it must be found in the provisions of the state statutes.   Chapter 83, Gen. St. Minn. 1878, enacts that "every boat or vessel used in the navigating of the waters of this state is liable—*First*. For all debts contracted by the master, owner, agent, or assignee thereof, on account of supplies furnished for the use of such boat or vessel, on account of work done or service rendered on board or for the benefit of such boat or vessel, or on

account of labor done or materials furnished by mechanics, tradesmen, or others in building, repairing, fitting out, furnishing, or equipping the same." The succeeding section of the act provides the method of procedure for the enforcement in the state courts of the right conferred in the first section, and in substance the remedy consists in a proceeding *in rem*. This statute was enacted before the decisions of the United States supreme court in *The Moses Taylor*, 4 Wall. 411, and *The Hine* v. *Trevor*, Id. 555, in which it was held that it was beyond the power of the state legislature to confer upon state courts the right to enforce by proceedings *in rem* claims and liens against vessels upon the navigable waters of the country. In deciding what the statute as originally passed was intended to provide for, we have the right to consider it as the legislature enacted it. It said that it does not create a lien because the statute does not so expressly declare; that is, it does not declare in set phrases that the claims named in the act shall be liens. Liens are, so far as the source of their creation is concerned, divisible into common-law, equitable, maritime, and statutory. Originally, by the common law, a lien consisted merely in the right to retain possession, under certain circumstances, of the property of another, until some debt or charge was paid. Equitable liens did not depend upon possession, nor, strictly speaking, did they constitute a *jus in re* or a *jus ad rem*, but more properly constituted a charge upon the thing. 2 Story, Eq. Jur. § 1215; *Peck* v. *Jenness*, 7 How. 612. At common law, though ordinarily the delivery of possession by the one entitled to a lien destroyed or terminated the lien, yet by contract the parties might agree to continue the lien after delivery, or, in other words, might agree that the property, after delivery, should be subject to be taken and sold if the purchase price or other charge thereon was not paid. *Gregory* v. *Norris*, 96 U. S. 619. In equity, the lien consisted in the right to subject the property, even though not in possession of the lienor, to the payment of the debt or claim, as a charge upon the property; and a maritime lien is of like nature in this respect. Thus, in the case of *The Rock Island Bridge*, 6 Wall. 213, it is said:

"A maritime lien, unlike a lien at common law, may, in many instances, exist without possession of the thing upon which it is asserted, either actual or constructive. It confers, however, upon its holder such a right in the thing that he may subject it to condemnation and sale to satisfy his claim for damages."

Bouvier defines a "lien" to be "a hold or claim which one has upon the property of another as a security for some debt or charge." When, therefore, a statute declares that under certain circumstances a person shall have a lien upon a certain class of property for a debt or charge due, what is meant is that the person shall have the right to hold the property for, or subject it to, the payment of the claim or charge. On the other hand, if the statute declares that the person shall have the right, under the given circumstances, to hold certain property for, or subject it to, the payment of a certain claim or charge, this, in like manner, creates and confers a lien, although the word "lien" may not be used in the statute. It is the right to hold or subject the property to the pay-

ment of the claim or debt that constitutes the lien, and the mere words used in the statute are immaterial, so long as the substantial right itself is created. The statute passed by the legislature of Minnesota declares that every boat or vessel used in navigating the waters of this state is liable for the several classes of debts or claims named in the statute, and then provides the method by which the boat may be seized and sold for the payment of the claim or debt. The fact that the legislature did not use the word "lien" in the statute cannot change the fact that the act does and was intended to make the classes of claims therein named charges upon the boat or vessel, and to subject the boat to seizure and sale for the payment thereof; and, this being the very essence of a lien, it follows that the act does create a lien in favor of the classes of claims therein enumerated.

It is, however, argued with much force that, it having been held that the state legislature had not the right to enact that the lien thus created should be enforced by a proceeding *in rem*, the whole statute must be held invalid and void. In the case of *The Edith*, 94 U. S. 519, this exact question was suggested by the supreme court, but was not decided. The general rule is that, "where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other. * * * If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." Cooley, Const. Lim. 215. What was the purpose of the legislature in enacting the act in question? It having been held that by the maritime law no lien existed for supplies furnished to or labor done upon a domestic vessel, persons furnishing the same in Minnesota to vessels belonging to that state could not hold the boat liable for claims due them. To remedy this, and to place persons furnishing supplies and labor to domestic vessels on an equality with those furnishing the same to foreign vessels, the statute was enacted. The creation of a lien upon a domestic vessel for claims of the character named was a subject-matter wholly within the legislative power of the state, and the legislature had the undoubted right to declare that for claims due for supplies or labor furnished to domestic vessels a lien should exist upon the vessel. The main object of the statute, to-wit, the creation of the lien, was within the power of the state legislature. Having created the lien, as it had a right to do, the legislature then undertook to provide a means by which such lien might be enforced in the state courts. The means provided fail of effect because it is held that the state cannot confer the right to entertain a proceeding *in rem* upon the state courts in cases involving vessels used upon the navigable waters of the United States. The lien created by the statute may be enforced without resort to the courts of the state; that is, by a proceeding *in rem* in the courts of the United States. Can it be held

that, if the legislature had understood that the lien given to persons furnishing supplies to domestic vessels could only be enforced by a proceeding *in rem* in the United States courts, it would not have created the lien? To so hold would, in effect, be deciding that the legislature gave greater weight to the mere form of the remedy than to the right which the remedy was intended to carry into effect. Suppose the legislature had passed an act the first section of which was identical with that of chapter 83, but instead of the remedy therein provided had enacted a common-law remedy in a suit against the owner; in such case, the lien would have existed with a constitutional means of enforcing the same in the state courts. At the same time, however, the lien thus created could have been enforced in the courts of admiralty by a proceeding *in rem*. Suppose the legislature had then repealed the sections providing the common-law remedy, leaving the section creating the lien unrepealed in terms, would it be held that the repeal of the common-law remedy defeated the right to the lien, or would it not be held that the legislature intended to leave the right to the lien intact, so that the holders thereof might enforce the same by the aid of the courts of admiralty? It seems clear that a court would not be justified in holding that the right to the statutory lien was destroyed simply because one means of enforcing the same was taken away, so long as another and entirely efficient method was in existence. Is not this substantially the exact position the statute is now left in? The legislature, in enacting the statute, created a lien on vessels for the protection of those furnishing supplies or labor at the home port, and also provided a means for enforcing such lien in the state courts. The latter, having been held unconstitutional, cannot avail the lienholder, but he is left for the protection of his rights to a proceeding in the courts of admiralty. This remedy being open to him, it cannot be said that the section of the statute creating the lien is wholly inoperative. If it can be enforced, it is certainly not inoperative; and yet that is the only ground upon which it can be held void. The section creating the lien is not unconstitutional. If it is invalid, it is so simply because no remedy exists for the enforcement of the right to a lien thereby created. Yet, as already said, an efficient remedy for the enforcement of the lien can be found by a proceeding in the courts of admiralty.

In *Bank* v. *Dudley's Lessee*, 2 Pet. 492, in discussing the effect of the occupying claimants law of Ohio, the supreme court held that the provisions of the state law in regard to the appointment of commissioners to assess the damages could not be enforced in a law case in the United States court, yet the general benefit of the statute could be saved to the occupant by an application on the equity side of the court; it being held that, "if any part of the act be unconstitutional, the provisions of that part may be disregarded, while full effect will be given to such as are not repugnant to the constitution of the United States, or of the state, or to the ordinances of 1787." The principle recognized in this case, that the remedy provided in the statute could not be followed in the United States courts because it deprived a party of a trial by jury in a law case, yet that the substantial right created by the statute could be made effect-

ual by an appeal to the equity court, supports the proposition that the mere fact that a special remedy provided in the statute may be invalid does not, of necessity, render the whole statute inoperative.

In *Fletcher* v. *Morey*, 2 Story, 555, it was held that a lien or equitable claim constituting a charge *in rem* could be created by agreement, and that such lien was valid, although no remedy for its enforcement was provided by the state statutes, the rule being that courts should strive to so construe statutes that effect shall be given thereto, rather than that they should be held void. It being clear that the main purpose in the enactment of the statute in question was to create a lien for supplies furnished and labor done on domestic vessels, and as this purpose is wholly free from constitutional objection, I deem it the better course to hold that the portions of the statute creating the lien are separable from those providing a remedy, and that the invalidity of the latter does not render the former also void, for the reason that the lien thus created can be enforced in the admiralty courts, and thus the substantive right created by the statute is preserved for the protection of those for whose benefit the statute was enacted.

2. It is further urged that this statute touching the liability of boats and vessels has been abrogated by the subsequent statutes on the subject of mechanics' liens. Chapter 90, Gen. St. 1878, provides, *inter alia*, that "whoever performs labor or furnishes materials or machinery for erecting, constructing, altering, or repairing any house, mill, manufactory, or other building or appurtenances, or for constructing, altering, or repairing any boat, vessel, or other water-craft, by virtue of a contract with the owner or agent thereof, shall have a lien to secure the payment of the same upon such house, mill, manufactory, or other building and appurtenances, and upon such boat, vessel, or other water-craft," etc. This statute does not expressly repeal the act touching boats and vessels, but it is claimed that it is inconsistent therewith, and therefore repeals it by implication. The rule applicable in determining whether such is the effect of the latter statute is that "when there are two acts or provisions of law relating to the same subject, effect is to be given to both, if that is practicable. If the two are repugnant, the latter will operate as a repeal to the former to the extent of the repugnancy. But the second act will not operate as such repeal merely because it may repeat some of the provisions of the first one, and omit others, or add new provisions. In such cases, the later act will operate as a repeal only where it plainly appears that it was intended as a substitute for the first act. As Mr. Justice STORY says: 'It may be merely affirmative, or cumulative, or auxiliary.'" *Railway Co.* v. *U. S.*, 127 U. S. 406, 8 Sup. Ct. Rep. 1194; *Wood* v. *U. S.*, 16 Pet. 342. The mechanic's lien law by its terms includes labor and materials expended in constructing, altering, or repairing boats or vessels; and is therefore mainly, if not wholly, applicable to boats in the process of construction, or when laid up for repairs; or, in other words, when the same are not upon the navigable waters. Furthermore, the mechanic's lien law does not apply to supplies furnished to or labor done in and about the boat in the navigating the same. The one applies to labor

done or materials furnished in constructing the boat or refitting it in order that it may undertake the business of navigating the waters of the state, while the other deals with supplies furnished or labor done in connection with the navigation thereof; so that while there may be cases arising in which the labor done or supplies furnished might come within the purview of either statute, this does not show that the legislature intended to abrogate the one act by the enactment of the other. The two statutes deal with the property when in widely different circumstances, and there is no repugnancy or inconsistency between the provisions of the two acts of such a marked character as to justify the conclusion that the latter statute repeals the other. The act of March 8, 1877, which has been commented on by counsel, does not refer to boats or vessels by name, and if they can be included in the general words used in the statute, which in my judgment they cannot, yet the lien given by the statute is for labor done or materials furnished in the construction of the article. Giving a lien for labor done or materials furnished in the building of a boat, does not in any manner conflict with the liens created by chapter 83 of the General Statutes, and hence that chapter remains unaffected by any subsequent statute.

The first section of chapter 83 of the Statutes of Minnesota being then in force, it follows that persons who have furnished supplies for the use of the boat, or have done work or rendered services on board the same or for the benefit thereof, or have done labor or furnished materials in repairing, fitting out, furnishing, or equipping the same, are entitled to a lien for the sums due them, provided proceedings for the enforcement of the lien have been brought within one year after the cause of action accrued to them,—this being the express limitation found in the statute; and it is applicable to proceedings for the enforcement of such statutory liens in the United States courts as well as to proceedings in the state courts. *The Edith,* 94 U. S. 519. Subdivision 4, § 1, c. 83, provides that the cause of action shall accrue against the vessel when the contract for the work done or services rendered is fully performed. If, therefore, any of the libelants herein claiming liens under the state statute have failed to file their libels, original or by intervention, within one year from the time the cause of action accrued, the right to a lien no longer exists.

3. The master disallows an item of $132.50 in the claim filed on behalf of the E. M. Dickey Company. This money was advanced at the request of the master of the vessel, to release it from a seizure by the United States marshal at Dubuque, on a libel filed to recover that amount for coal furnished at Le Claire, Iowa, by other parties. As I understand the report of the master, he disallows this item on the ground that the E. M. Dickey Company should have alleged and proved that the parties furnishing the coal had a valid lien upon the vessel, thus placing the right of the Dickey Company on the same footing as though it had bought out the claim of the Le Claire parties, and succeeded to their rights and no more. The facts are, however, that the money was advanced at the request of the master to relieve the boat from an actual

seizure then existing, and to prevent the loss and damage that would have been occasioned to all had the boat been detained in the custody of the marshal. The E. M. Dickey Company did not buy the claim from the creditor, but advanced the money to the debtor. While in many cases courts hold under somewhat similar circumstances that the party advancing the money is subrogated to the rights of the original creditor, this is an equitable principle applied for the purpose of protecting the one who advances money for the benefit of the property. It is a misapplication of the rule to hold that a person who advances money under such circumstances has, in fact, thereby bought the claim of the libelant, and by reason of having bought the same succeeds only to the strict right of the libelant, and has thereby lost the right to a lien. As it is a fact that the Le Claire Company did not sell their claim to the E. M. Dickey Company, equity will not so treat the transaction for the purpose of defeating the rights of the latter company. When that company was appealed to for aid by the master of the boat, the facts were that a libel had been duly filed in the United States court at Dubuque, claiming a lien upon the boat for coal furnished thereto by the Le Claire parties, and the vessel had been seized thereon by the marshal. Such seizure effectually interrupted the voyage of the boat, without reference to the validity or invalidity of the claim upon which the libel was filed. Certainly it was the duty of the master to do all within his power to release the boat, and prevent the loss that would otherwise accrue from the detention of the vessel. For that purpose he applied to the E. M. Dickey Company to advance the sum needed to discharge the claim. If, under such circumstances, the rule is that the person advancing the money to release the boat cannot hold the boat for the money advanced, unless he can prove that the claim upon which the seizure was had was a valid lien on the boat, or, in other words, if he is placed in the shoes of the original libelant, few advances would ever be made to release boats under such circumstances. That the libel for supplies furnished had been duly filed; that the boat had been seized, and was held in custody; that such seizure was in a foreign port; that the master applied for the money needed to release the boat; that no circumstances throwing doubt upon the *bona fides* of the claim or upon the action of the master were known to the E. M. Dickey Company, and none are now claimed to exist,—these are facts which, it seems to me, entirely justify the conclusion that the E. M. Dickey Company are entitled to a lien for the amount claimed; and the exception to the report on this ground is therefore sustained.

4. The question of priority of the several liens for supplies and for labor done as between liens created by the maritime law and by the state statute has been discussed by counsel, and may now become of importance, in view of the fact that the right to a lien under the state statute is recognized. Without attempting a review of the conflicting authorities on this subject, I shall content myself with a brief statement of what on principle seems to me to be the correct rule on this subject. In the first place, the state cannot by legislation control the rule to be followed by

the courts of admiralty in distributing the proceeds of boats and vessels seized and sold under admiralty process. When liens are created by state statutes, the court of admiralty will, when called upon to recognize and enforce such liens, assign them to the class to which they belong under the maritime law of priority. When thus assigned to the class of liens to which they belong under the maritime law, they will ordinarily share equally with all other liens of the same class. Thus a claim for supplies furnished at the home port, if a lien therefor is created by the state statute, will ordinarily be placed in the class of supplies furnished, and will share with all other liens of the same nature; no distinction being made between supplies thus furnished and those furnished at a foreign port. In both instances the supplies are furnished on the security of a lien on the vessel; the use made thereof, and value to the vessel, is the same; and I can see no good reason for holding that the equity of the one party is superior to that of the other, simply because in the one case the lien is created by the law maritime, and in the other by a state statute. The character of the supplies furnished or work done, whether the same are or are not maritime in their nature, and whether they are or not, under the rules of the law maritime, entitled to priority, will determine, as I have already said, the class to which the several claims are to be assigned; but, when thus assigned, equality is equity among claims of the same class. As the ruling herein made on the question of the lien given by the state statute will require a restatement of the accounts, the case will be sent to the master for that purpose.