[Civ. No. 257. Fourth Appellate District.—July 11, 1930.]

CHARLES P. MORSE, Respondent, v. W. N. DOUGLAS et al., Appellants.

Sweet & Plank for Appellants.

Luce & Swing for Respondent.

MARKS, J.—This is an appeal from a judgment in favor of respondent for damages for the death of his minor son. The complaint is based upon the negligence of the appellants under the attractive nuisance doctrine.

Appellants were copartners engaged in the business of roofing houses by the use of water-proof paper and melted tar. On June 22, 1927, they were engaged in the work of roofing a dwelling-house being erected in a well built up residential district of the city of San Diego. They brought to the building a two-wheeled vehicle upon which was an iron vat in which tar was melted. Its wheels were about thirty-two inches in diameter and were connected by a

straight axle. Upon this axle rested a platform which supported the vat under which was a fire-box. Extending from the axle and platform to the front was a tongue used to connect the trailer with the vehicle which furnished the motive power to draw the vat from place to place. The tongue was probably about six feet long. For about half its length it was built out in a prolongation of the platform, at which point it was bent upward at an angle. When the vehicle rested upon a level street the vat tipped forward, being supported by the wheels and the angle of the tongue, with the end of the tongue elevated several inches above the road. The platform supporting the vat extended a number of inches to the rear of the fire-box and formed a step upon which workmen could stand to stir the tar and dip it from the vat.

On the afternoon of June 22, 1927, the employees of appellants brought the trailer carrying the vat to the street in front of the house upon which they were placing a roof. It was parked in the street with the front of the right wheel against the curb and the body projecting into the street at an angle of about forty-five degrees from the curb. The tongue was resting upon a pile of sand in the space between the sidewalk and the curb. The end of the tongue was elevated between thirty-two and forty-eight inches above the ground upon which the wheels rested, thereby raising the platform of the trailer to somewhere near a horizontal position. A fire was built in the fire-box and the tar in the vat melted at a temperature of about three hundred degrees Fahrenheit. The employees of appellant left their work at about 4:30 o'clock in the afternoon. Some of them testified that before leaving the place one of them had put a sack full of broken tile or gravel on the tongue resting on the top of the sand pile, and a block of wood back of the right wheel of the trailer, and another block of wood upright between the rear end of the platform of the trailer and the ground. Water was thrown on the fire in the fire-box and a cover placed over the vat.

Shortly after the workmen left, several children congregated and commenced to play on the sand pile supporting the tongue of the trailer. They lived in the neighborhood, and were between the ages of seven and eleven years, inclusive. They did not see the sack of tile or gravel on or

near the tongue, or the blocks described by the workmen. Several other witnesses testified that they searched for them after the accident but could not find them. Black smoke was seen coming out of the vat, and a stick used by the workmen to stir the tar was left sticking up from the vat between its side and the cover.

After playing for a time on the sand pile with the other children, Jack Morse, of the age of seven years, the son of respondent, stepped upon the rear of the platform and started to stir the boiling tar with the stick. His weight evidently overbalanced the trailer and it tipped backwards throwing the child to the ground and the hot tar poured over him. He died from the burns thus received within a few hours.

The case was tried before a jury which returned a verdict in favor of respondent. Appellants rely upon three grounds for a reversal of the judgment: First, that the doctrine of "Attractive Nuisance" does not apply to the facts of this case; second, that the evidence was insufficient to support the verdict; third, that the court erred in the instructions given, and in refusing those proposed by appellants.

The doctrine of attractive nuisance cases grew out of injuries to children upon turntables maintained by railroads upon their own properties. It has been the subject of sharp differences of judicial opinions in different jurisdictions. Since the decision of the case of *Barrett* v. *Southern Pac. Co.*, 91 Cal. 296 [25 Am. St. Rep. 186, 27 Pac. 666, 667], the courts of California have taken the humanitarian side of the controversy and have held the owner of machinery and appliances both dangerous and attractive to children of tender years and immature experience, liable for damages following injury to them, where there was a failure on the part of the owner to use ordinary care in safeguarding such machinery or appliances. The foundation of the doctrine is clearly stated in the Barrett case as follows:

"Whether, in any given case, there has been such negligence upon the part of the owner of property, in the maintenance thereon of dangerous machinery, is a question of fact dependent upon the situation of the property and the attendant circumstances, because upon such facts will depend the degree of care which prudence would suggest as reasonably necessary to guard others against injury there-

from; 'for negligence in a legal sense is no more than this: the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury.' (Cooley on Torts, 630.) The question of defendant's negligence in this case was a matter to be decided by the jury, in view of all the evidence, and with reference to this general principle as to the duty of the defendant. If defendant ought reasonably to have anticipated that leaving this turntable unguarded and exposed, an injury such as plaintiff suffered was likely to occur, then it must be held to have anticipated it, and was guilty of negligence in thus maintaining it in its exposed position. It is no answer to this to say that the child was a trespasser, and if it had not intermeddled with defendant's property it would not have been hurt, and that the law imposes no duty upon the defendant to make its premises a safe playing-ground for children.

"In the forum of law, as well as of common sense, a child of immature years is expected to exercise only such care and self-restraint as belongs to childhood, and a reasonable man must be presumed to know this, and required to govern his actions accordingly. It is a matter of common experience that children of tender years are guided in their actions by childish instincts, and are lacking in that discretion which is ordinarily sufficient to enable those of more mature years to appreciate and avoid danger, and in proportion to this lack of judgment on their part, the care which must be observed toward them by others is increased. And it has been held in numerous cases to be an act of negligence to leave unguarded and exposed to the observation of little children dangerous and attractive machinery which they would naturally be tempted to go about or upon, and against the danger of which action their immature judgment opposes no warning or defense."

In some jurisdictions the rule, where recognized at all, has been confined to turntable cases where it found its origin. California has been more liberal in its application, her courts recognizing the principles upon which it rests, rather than the facts which gave it origin. The present doctrine is well stated as follows:

"One who places a dangerous *contrivance* in a place frequented by children, and knowing, or having reason to believe, that children will be attracted to it and subjected to injury thereby, owes the duty of exercising ordinary care to prevent injury to them, and this because he is charged with knowledge of the fact that children are likely to be attracted thereto and are usually unable to foresee, comprehend and avoid the danger into which he thus allures them. One theory upon which this rule seems to be predicated is that the attractiveness of the dangerous *contrivance* raises an implied invitation to children to go upon the property, and that the owner owes to them the duty which is owing to an ordinary invitee. Another and more generally accepted theory is that, although the children are trespassers, they come within that exception to the general rule that an owner owes no duty to trespassers which imposes liability upon an owner who maintains a trap or concealed danger upon his premises into which he might reasonably anticipate that others may fall." (19 Cal. Jur. 624.) (Emphasis ours.)

The contrivance must be artificial and uncommon, as well as dangerous, and capable of being rendered safe with ease without destroying its usefulness, and of such a nature as to virtually constitute a trap into which children would be led on account of their ignorance and inexperience. The principle of the rule having been recognized and firmly established in this state, it has been applied to a variety of machines, appliances and contrivances coming within this definition. (*Barrett* v. *Southern Pac. Co., supra; Cahill* v. *E. B. & A. L. Stone & Co.*, 153 Cal. 571 [19 L. R. A. (N. S.) 1094, 96 Pac. 84]; *Cahill* v. *E. B. & A. L. Stone Co.*, 167 Cal. 126 [138 Pac. 712]; *Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176 [118 Pac. 700]; *Skinner* v. *Knickrehm*, 10 Cal. App. 596 [102 Pac. 947]; *Bradley* v. *Thompson*, 65 Cal. App. 226 [223 Pac. 572]; *Sandberg* v. *McGilvray-Raymond Co.*, 66 Cal. App. 261 [226 Pac. 28]; *Faylor* v. *Great Eastern etc. Co.*, 45 Cal. App. 194 [187 Pac. 101].)

The trailer with its fire-box and vat of boiling and smoking tar, with a convenient stick protruding with which to stir the molten mass, was attractive to children. The contrivance was dangerous in the position in which it was left with its tongue elevated so that an added weight on

the rear would overbalance it and throw the boiling tar over one standing or lying to its rear. This should have been apparent to an adult of usual experience taking the most ordinary interest in the safety of others. It was artificial and provided an uncommon danger. A pot of boiling tar so balanced on two wheels that it could be easily overturned, presented a threat to the safety of children not usually met in their play. The fact of its being left in a position where it could be overbalanced with ease and the application of a little weight, furnished its danger which was one that would not be apparent to the young and inexperienced mind. It could be made safe easily and without destroying its usefulness. This is apparent from the evidence. A policeman who reached the scene shortly after the accident rendered the contrivance safe by turning it around so that the projecting board on the rear of the platform rested on the curb. The vehicle then being supported by the board on the curb, its two wheels and the tongue on the ground in front, was stable and not easily upset. We believe that under the rule announced by the California courts, the trailer and its vat of tar and fire-box came within the attractive nuisance doctrine in force in this jurisdiction, and that if the appellants either knew, or had reason to believe, that children would be attracted to it, they owed the children the duty of exercising ordinary care to prevent their injury because appellants are charged with the knowledge of the fact that children are likely to be attracted thereto, and are usually unable to foresee, comprehend and avoid the danger into which they thus knowingly allured them. (*Cahill* v. *E. B. & A. L. Stone & Co., supra; Bradley* v. *Thompson, supra.*) ■ Whether appellants did use ordinary care was a question of fact for the jury, which it resolved in favor of the respondent. (*Barrett* v. *Southern Pac. Co., supra.*) This finding by the jury is supported by the evidence and cannot be disturbed here, and the negligence of appellants follows as a necessary and natural conclusion.

■ Appellants urge that the evidence was insufficient to support the verdict, because it does not appear that either they, or their employees, knew of the presence of children in the vicinity in question, and that the evidence also fails to show that children were present at any time while the defendants or their employees were there. The evidence

does not show that appellants had actual knowledge that any children played around or upon the trailer, and we do not believe that the law requires any such particularity of proof. The ordinary care with which appellants are charged requires them to use ordinary prudence in the conduct of the affair under consideration. This implies the use of ordinary foresight and prudence to prevent the happening of an event which in the ordinary and usual course might be expected to happen. The witnesses described the district in which the trailer was left by appellants, as a residential district fairly closely built up with dwelling-houses. It is a matter of common knowledge that dwellings in a residential district of a city are occupied by families, and that families consist of parents and their children. It is also a matter of common knowledge, that in such districts, children play in the streets and are attracted to houses under construction, and by sand piles. Appellants should not be heard to plead ignorance of a fact, when by the use of the most ordinary intelligence and a recognition of the entirely obvious conditions existing and surrounding the place of the accident, the existence of such fact immediately becomes apparent. ■ A person should be charged with seeing that which is within clear view, and of knowing that which is within the common knowledge of all. They certainly had reason to believe, and should have known, that the place in which they left their dangerous contrivance was frequented by children who would be attracted to it and injured thereby. (*Cahill* v. *E. B. & A. L. Stone & Co., supra.*) It is as much a want of ordinary care for a person to fail to use his mind and anticipate an obvious danger to another, as it is for him to fail to use his sight and see an apparent danger to another.

■ We have examined the instructions given by the trial court and find no error in them. We believe that the jury was fully and fairly instructed and that there was no prejudicial error in refusing to give the instructions proposed by the appellants.

Judgment affirmed.

Cary, P. J., and Barnard, J., concurred.