JOHNSON, APPELLANT, *v.* HERRING ET AL., RESPONDENTS.

(No. 6,740.)

(Submitted March 11, 1931. Decided April 8, 1931.)

[300 Pac. 535.]

*Mr. C. F. Holt, Mr. Lester H. Loble* and *Mr. Hugh R. Adair,* for Appellant, submitted a brief; *Mr. Adair* argued the cause orally.

*Messrs. Clift & Glover,* for Respondents, submitted a brief; *Mr. R. H. Glover* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

William Johnson brought action against Ed. Herring and the Great Falls Ice & Fuel Company, a corporation, to recover damages for the death of his son, aged six years and four months, alleged to have resulted from the negligent operation of a truck owned by the company and driven by Herring. Issue was joined and, in due time, the case came on for trial. The plaintiff introduced all of his testimony and rested; whereupon defendants moved for judgment of nonsuit, which motion was sustained and judgment entered. From this judgment plaintiff has appealed. The only question presented by this appeal is whether or not, on the record as made, the trial court was justified in taking the case from the jury.

There was no eye-witness to the accident resulting in the death of the boy, Frank Johnson, and but one witness to what occurred immediately preceding it. In support of the judgment counsel for defendants assert that there was no proof of negligence of the defendants, as the proximate cause of the accident, but only proof that an accident did happen and that

this fact alone would not warrant the submission of the case to a jury, as the doctrine of *res ipsa loquitur* does not apply. Granting the premise on which it is based, we agree with the conclusion for which counsel contend.

The mere fact that a motor-driven vehicle comes in contact with a pedestrian, to the injury of the latter, raises no presumption of negligence on the part of the driver of the vehicle; in such a case the right to recover damages for the injury inflicted on the pedestrian depends upon proof of the allegation, necessary in the complaint, that the driver of the vehicle was guilty of negligence proximately causing the injury. (*McAvoy* v. *Kromer*, 277 Pa. St. 196, 120 Atl. 762; *Blazic* v. *Franzwa*, 179 Wis. 260, 191 N. W. 572.) Nor does the fact that the injured person was a child of tender years and the driver a man, shift the burden of proof as to the proximate cause of the accident (*Frank* v. *Fee*, 190 Mo. App. 73, 175 S. W. 217), although the age of the child may bar the defense of contributory negligence.

The doctrine of *res ipsa loquitur* is not, as sometimes assumed, an exception to the rule that in personal injury cases the plaintiff must prove actionable negligence. Negligence may be proved by circumstantial evidence, and where the circumstances proved are such as to point by fair and reasonable inference to the conclusion that the defendant was guilty of negligence, they are sufficient to take the case out of the realm of conjecture and into the field of legitimate inference and to support a finding by the jury that the defendant was guilty of negligence. (*Thress* v. *Hackler* (Va. 1930), 154 S. E. 502.) The phrase *"res ipsa loquitur,"* literally interpreted, — "the thing speaks for itself," — does not mean that proof of the accident alone warrants recovery in cases to which the doctrine is applicable, but is merely a short way of saying that the circumstances attendant upon the accident are, of themselves, of such a character as to justify a jury in inferring negligence as the proximate cause of the accident. (*Benedick* v. *Potts*, 88 Md. 52, 41 L. R. A. 478, 40 Atl. 1067; *Cohen* v. *Farmers' Loan & Trust Co.*, 70 Misc. Rep. 548, 127 N. Y. Supp. 561; *Sand Springs Park* v. *Schrader*, 82

Okl. 244, 22 A. L. R. 593, 198 Pac. 983; *Rost* v. *Roberts*, 180 Wis. 207, 192 N. W. 38.) "The *res* includes the attending circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue—the defendant's negligence." "The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that is necessary to offer." (*Griffen* v. *Manice*, 166 N. Y. 188, 82 Am. St. Rep. 630, 52 L. R. A. 922, 59 N. E. 925.)

These declarations are in harmony with those of this court on the subject. The doctrine applies where the defendant is in the management and control of the instrumentality which causes the injury or accident and the attendant circumstances are such as to raise a presumption that the accident would not have occurred had the defendant used reasonable care (*McGowan* v. *Nelson*, 36 Mont. 67, 76, 92 Pac. 40; *Hardesty* v. *Largey Lumber Co.*, 34 Mont. 151, 86 Pac. 29), and is applied "on the theory that the plaintiff is not in a position to show the particular circumstances which caused the offending instrumentality to operate to his injury, but that the defendant, having the exclusive management and control, and being thus more favorably situated, possesses the knowledge of the cause of the accident, and should, therefore, be required to produce the evidence in explanation." When properly applied, it "operates to make out a prima facie case, but goes no further." (*Lyon* v. *Chicago etc. Ry. Co.*, 50 Mont. 532, 148 Pac. 386.)

"While negligence may be proved by indirect or circumstantial evidence, the circumstances, if any thus proved, must not only tend to prove negligence and that such negligence was the proximate cause of the injury, but they must equally tend to exclude any other reasonable conclusions." (*Norton* v. *Great Northern Ry. Co.*, 85 Mont. 270, 278 Pac. 521.)

However, the rule of absolute exclusion, prevailing in criminal cases, does not apply to civil actions and it is sufficient

to make out a prima facie case if the plaintiff can show that the injury is more naturally attributed to the negligence alleged than to any other cause which the evidence might also tend to establish (*Andree* v. *Anaconda C. Min. Co.*, 47 Mont. 554, 133 Pac. 1090; *Freeman* v. *Chicago etc. Ry. Co.*, 52 Mont. 1, 154 Pac. 912), and no case should ever be withdrawn from the jury, declared by statute to be the sole judges of the facts, unless the evidence is susceptible of but one construction by reasonable men, and that in favor of defendant, or where the evidence is in such condition that, if the jury were to return a verdict in favor of the plaintiff, it would become the duty of the court to set it aside. (*Black* v. *Martin*, 88 Mont. 256, 292 Pac. 577; *McKeon* v. *Kilduff*, 85 Mont. 562, 281 Pac. 345.)

On a motion for nonsuit every fact is deemed to be proved which the evidence tends to establish, and the evidence is to be viewed in the light most favorable to the plaintiff, and if, so viewing the evidence, a prima facie case is made out, it follows that the trial court erred in granting the nonsuit. Nonsuit should never be granted unless it follows as a matter of law that recovery cannot be had upon any view of the evidence, "including the legitimate inferences to be drawn from it." (*Morelli* v. *Twohy Bros. Co.*, 54 Mont. 366, 170 Pac. 757.)

With these rules firmly in mind we will analyze the testimony before the trial court at the time the nonsuit was granted.

Frank Johnson, aged six years and four months, was fatally injured on July 11, 1928, at approximately 4 P. M. The day was clear, bright and hot. The scene of the accident was about midway between two streets in Great Falls, in a public alley east and west. The alley was straight, level, free from any obstruction to view or passage, and twenty feet wide. At or near its center the alley was bounded on the south by the rear fences of the Johnson property and neighboring homes, and on the north by two vacant lots of fifty feet each, on which children played, traveling and crossing the alley from their homes for this and other purposes. At the scene of the accident bridge timbers were piled to a height of sixteen inches

parallel with, and about a foot from, the north line of the alley and on the vacant lots.

Just prior to the accident the defendant Herring drove into the alley from the west and stopped to make a delivery of ice. Children, seen by the driver, gathered at his truck for the purpose of securing ice, but "scattered" on his return from making the delivery. Of these children, Frankie Johnson and Russell Morrison went east in the alley "going home," young Morrison walking a few feet to the rear of young Johnson. When he had reached a point opposite the bridge timbers, Morrison heard the ice truck coming and, looking back, saw it within eighteen feet of him; it sounded no warning and, while he made no statement as to the position of the truck with reference to the north line of the alley, he testified that he jumped on the pile of bridge timbers and was so scared he could not cry out. At that time Frankie Johnson was at the end of the bridge timbers, a few feet east of young Morrison, who did not see him again until the truck had passed on east of that point, when he observed the other boy lying in the middle of the alley.

The truck driver stopped near the east end of the alley, backed and picked the boy up, got his mother, and took him to the hospital; he told Mrs. Johnson that he did not see the boy and did not know how the accident happened, but in a conversation with Rev. Kohler the same day, said that he did not sound a warning "because he did not expect these children there because he saw them." What he meant by this ambiguous statement was not explained.

When picked up, the boy was unconscious, his head in a pool of blood fourteen or sixteen inches in diameter, which subsequent measurements showed to be eleven feet west of the east line, extended, of the Johnson property, and eleven feet south of the north line of the alley; it was also a few feet west of the end of the bridge timbers.

No obstruction and no other vehicle being in the alley at the time, the injured boy was at all times in plain view of anyone passing east in the alley.

The boy suffered a compound fracture of the left leg or foot, slight bruises on the left leg and left arm, contusions on the head, a fractured skull and bruises or "black and blue spots" on the abdomen; these latter were two or three in number and each about the size of a dollar; he died about thirty minutes after reaching the hospital, without regaining consciousness.

Dr. Harris, the attending physician, testified that the fracture of the leg or foot was such as would have been caused by the wheel of the truck passing over the foot, but that the indications were that the truck did not pass over any other portion of the body. The fracture of the skull could have been caused by being struck by a heavy object such as a truck while in a standing position, and thrown to the ground "if he were hit with sufficient violence, that is, if thrown to the ground with sufficient violence."

The driver told Rev. Kohler that the reason he stopped near the end of the alley was because he felt a "bump" and, looking back, saw the boy lying on the ground.

What, then, are the inferences, reasonable or otherwise, to be drawn from the evidence adduced?

Counsel for the defendants offer several alternatives which they ·assert are as reasonable inferences as that which would lead to a declaration that the boy was struck by the truck, and, therefore, contend that a verdict in this case could only be based upon "conjecture or surmise," which would render any verdict returned invalid.

The first theory advanced is that the boy may have gone to the rear of the truck for another piece of ice and, the truck having passed over some hump in the ground causing the "bump" of which the driver spoke, a cake of ice was dislodged from its position and fell upon him. On cross-examination Dr. Harris stated that the injuries received might possibly have been caused in such manner, but on redirect he explained that such an accident could only have caused the injuries sustained in the event a block of ice weighing 300 pounds fell from a considerable distance, and this possibility was entirely eliminated by proof that no block of ice fell to the ground and

no such block could have fallen within the truck, had the boy been therein, for the truck contained but a cake and a half of ice.

A second alternative suggested is that the boy may have been attempting to "steal a ride" on the running-board of the truck, and, slipping, projected his left foot under the rear wheel. There is no intimation in the record that the truck was fitted with running-boards or as to whether it was an open or closed truck.

The remaining alternatives are that "the boy himself may have run into the truck, or may have tried to grab the truck, or he may have attempted to grab some ice out of the truck, or he may have attempted to run around the truck." If the boy did "run into the truck" from the front he would have been guilty of contributory negligence, had he been of an age to be chargeable therewith, but, being under seven years of age, the defense of contributory negligence is not available (*Burns* v. *Eminger,* 81 Mont. 79, 261 Pac. 613), and the question of defendants' negligence would still be for the jury. If he ran into the rear of the truck he would have been going toward young Morrison, on the same side of the truck as he was, and it is reasonable to infer that the latter would have seen him, which he did not.

None of these suggestions of inferences can account for the bruises on the body or the contusions on the head of the boy, and, according to the doctor's testimony, which is all there is on the subject, the fracture of the skull could have been caused only by being "hit" or "thrown to the ground" with considerable violence, which would negative the idea that the boy slipped and fell and, in doing so, got his foot under the wheel of the truck, but would justify the inference that the boy was struck by the truck in motion.

The spot where the boy was picked up was in a direct line, in a southwesterly direction, from the point where he was last seen before the accident and the rear of the Johnson property, indicating that he was going home as he originally started to do.

No one of the inferences suggested by counsel for defendants is, therefore, as reasonable or convincing as the legitimate inference from all of the circumstances surrounding the accident; that the boy had started across the alley toward his home and had reached the middle thereof when he was overtaken by the truck, knocked down and run over. As the alley was straight, level and entirely free from obstructions of any kind, the day clear and bright, visibility good, and the boy twenty-five to thirty feet in front of the truck at the time young Morrison jumped from the alley to the timbers, there is no justification for the driver of the truck failing to see him and to watch him for the purpose of determining what, if anything, he was going to do. If, as he told Mrs. Johnson, he did not see the boy or know how the accident occurred, the circumstances warrant the inference that he negligently failed to keep a proper lookout, and, on the other hand, if, as he is said to have told Rev. Kohler, he did see the boys and the peril was such as to frighten young Morrison beyond the ability to cry out, it would seem that the truck was traveling at the extreme right of the alley and the driver was negligent in failing to sound his horn.

On a determination of the propriety of taking the case from the jury, we must take that view of the evidence, and the inferences reasonably and justifiably to be drawn therefrom, most favorable to the plaintiff and determine whether or not, under the law, a verdict might be found for the plaintiff. (*Gajda* v. *Reick-McJunkin Dairy Co.*, 18 Fed. (2d) 179.)

The duty to keep a lookout implies a duty to see what is in plain view, and the driver is bound to operate his vehicle with reference, not only to the pedestrians and conditions whom and which he actually sees, but also as to those which he should see in the exercise of reasonable care. (*Johnson* v. *Herring*, 89 Mont. 156, 295 Pac. 1100.) Further, it is as much a want of ordinary care for a person to fail to use his mind and anticipate an obvious danger of another, as it is for him to fail to use his sight and see an apparent danger to another. (*Morse* v. *Douglas*, 107 Cal. App. 198, 290 Pac. 465, 468.)

Of course, the driver's version of the accident, when given, may throw an entirely different light upon it and, while the defense of contributory negligence is not available, facts which would show such negligence on the part of a pedestrian chargeable therewith may be such as to relieve a driver of the charge of actionable negligence.

However, a careful canvass of the evidence before the trial court convinces us that the plaintiff made out a prima facie case, which, in the absence of any explanation of the accident and the circumstances surrounding it, would sustain a verdict in favor of the plaintiff. It follows that the court erred in entering judgment of nonsuit. This conclusion is in harmony with the later decisions of courts elsewhere under somewhat similar fact conditions shown. (*Gajda* v. *Reich-McJunkin Dairy Co.*, above; *Morse* v. *Douglas,* above; *Jones* v. *Barion,* 103 Cal. App. 59, 283 Pac. 885; *Parra* v. *Cleaver,* (Cal. App.) 294 Pac. 6; *Conner* v. *Henderson,* (Cal. App.) 291 Pac. 641; *Fontaine* v. *Dorsey,* (La. Dec. 1930) 131 South. 506.)

The judgment is reversed and the cause remanded to the district court of Cascade county for further proceedings not inconsistent with this opinion.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.