HICKMAN, Respondent, v. FIRST NATIONAL BANK OF
GREAT FALLS, Appellant.

(No. 8,138.)

(Submitted May 27, 1941. Decided September 27, 1941.)

[117 Pac. (2d) 275.]

*Messrs. R. H. Glover, S. B. Chase, Jr.,* and *John D. Stephenson,* for Appellant, submitted an original and a reply brief; *Mr. Glover* and *Mr. Stephenson* argued the cause orally.

*Mr. E. J. Stromnes* and *Mr. R. J. Nelson,* for Respondent, submitted a brief; *Mr. Stromnes* argued the cause orally.

404

MR. JUSTICE ERICKSON delivered the opinion of the court.

This appeal is from a judgment of the district court of Cascade county in favor of the plaintiff. The action was tried to a jury and, after its verdict, a motion was made for a new trial and that motion was denied. At the close of plaintiff's case defendant moved for a judgment of nonsuit and dismissal, and at the close of all the testimony defendant moved for a directed verdict. These motions were denied.

The testimony introduced on behalf of the plaintiff, which for the purpose of determining this appeal we take as true, was that on February 13, 1937, she had occasion to enter the building in question, owned by the defendant, for the purpose of investigating the status of a checking account in the banking offices of the defendant, which were located in the building. Her testimony is that she walked up the flight of stairs to the banking rooms and then, after completing her business there,

she went to the elevators, of which there were two, and pressed a button marked ''Down,'' and that as she was standing there waiting for an elevator, one of the elevators operated by the plaintiff's mother and which was then ascending stopped at that floor, and that her mother asked plaintiff to enter that particular elevator even though it was on its way up; that plaintiff would be let out on the ground floor when the elevator had completed its round trip to the eighth floor and return. Her testimony is that she entered the elevator and that at the time her mother asked her to enter it her mother told her that she had some matter to talk over with her. The testimony is that she rode to the eighth floor and then back to the first floor, and that she did not leave the elevator then but went again to the eighth floor, and upon the return of the elevator on that trip she rode in it to the basement; that the reason for going to the basement was in order to allow her mother to report to the building engineer that she thought something was wrong with the elevator. Her testimony is that the engineer did something to the handle mechanism of the elevator and then told plaintiff's mother to go ahead with the elevator; that thereupon the plaintiff and her mother re-entered the car and it was taken to the first floor; that on that trip, when they reached the first floor, she stated that she was going to get out of the elevator and go home, and that in reply her mother said, ''Just a minute, I want to finish telling you what I started''; and that her mother went on to tell her to make another trip to the eighth floor with her, and that when she returned to the first floor her mother would then let her out. From her testimony it appears that no fewer than three trips from the first floor to the eighth floor and return were made by the plaintiff after she entered the elevator for the purpose of descending to the first floor, so that she might leave the building. Plaintiff's testimony does not show the subject of the matter under discussion between herself and her mother, but her testimony is clear to the effect that the conversation for which she stayed on the elevator was in no way connected with

the business of the defendant or any of the tenants of the building, but that the matter under discussion was one of interest only to the plaintiff and the elevator operator, her mother.

The testimony of the plaintiff and of her mother is that for some reason the elevator, during the course of the morning in question, had not been working properly; that when the handle which operated the elevator was pushed down in order to start it in motion the elevator sometimes failed to respond and that it was necessary to push the handle down several times in order to start the car, and that on those occasions, when the car started, it started with a slight jerk. The testimony on behalf of plaintiff is that this matter was brought to the attention of the engineer of the building, and that he in turn called certain service men, who did not appear until after the alleged fall of the elevator. The testimony as to the actual accident is that on the last trip to the eighth floor, and while the plaintiff and her mother were alone in the car, when the handle was pushed down on the elevator for the purpose of starting the descent from the eighth floor, the elevator fell some feet, and that plaintiff was thrown to the floor and suffered the injuries which are the basis of this suit.

The defendant has assigned many errors and most of them concern the propriety of the instructions of the court which left to the jury the determination of whether or not the plaintiff at the time of the accident was an invitee on the premises of the defendant or merely a licensee. It is the defendant's view that plaintiff was not an invitee, as a matter of law, and with that view we agree.

The court instructed the jury, as a matter of law, that at the time she entered the building plaintiff was an invitee, and that this situation was also true at the time she entered the elevator in the first instance. The court, by appropriate instructions, left to the jury a determination of the question whether or not, between the time she entered the elevator and the time the accident occurred, her status had been changed from that of an invitee to that of a mere licensee. While under many circumstances

that question should properly be left to the jury, yet under the facts here that matter should have been determined by the court as a matter of law.

There is no question but that, had plaintiff entered upon the premises of the defendant originally for the sole purpose of discussing personal affairs with defendant's employee, plaintiff's mother, she would have occupied only the status of a mere licensee. The rule is stated in 89 A. L. R. 757, 758: "Generally speaking persons who enter the premises of an employer merely for the purpose of seeing an employee on business unconnected with that of the employer, or for the purpose of paying a social visit to the employee, are at best mere licensees to whom the employer owes no duty save to refrain from acts of wilful and wanton negligence." (Citing many cases.)

In 45 C. J., page 791, it is said: "Persons have been regarded as licensees where they enter premises to visit employees of the owner; to transact with the employees of the owner business in which the owner has no interest."

In the Montana case of *Jonosky* v. *Northern Pacific Ry. Co.*, 57 Mont. .63, 187 Pac. 1014, 1015, the court distinguished between an invitee and a mere licensee in this language: "An invitation is inferred where there is a common interest or mutual advantage, while a license is implied where the object is the mere pleasure, convenience, or benefit of the person enjoying the privilege."

It cannot be questioned that, had plaintiff not had occasion to transact business with the defendant or some other tenant of the building, and had she not originally entered upon the premises of the defendant for the purpose of this transaction, and had she been in the elevator only for the purpose originally of discussing matters with defendant's employee, she would never have acquired any status other than that of a licensee. The fact that she had upon her entry into the elevator the standing of an invitee does not mean that that standing would necessarily continue so long as she remained on the premises.

In the case of *Chichas* v. *Foley Bros. Grocery Co.*, 73 Mont. 575, 236 Pac. 361, 362, it was said: "An invitee who enters upon portions of the premises upon which he has no right to enter becomes a licensee."

In 45 C. J. 794, the author says: "Where a person has entered on the premises of another by invitation, express or implied, he is bound by that invitation and becomes a bare licensee if he goes for purposes of his own, to some part of the premises other than that to which he was invited, uses the premises for other purposes or in ways other than those for which they are intended, or to which his invitation extends, or remains on the premises beyond a reasonable time after his invitation has expired." And in the same work, at page 830, it is said: "An invitee may lose his status as such by remaining on the premises beyond a reasonable time after his invitation has expired, but a slight delay for a proper purpose after the conclusion of his business does not deprive him of his status as an invitee."

Applying the rules above set out to the fact situation in the present case, it is clear that, as a matter of law, at the time of the accident alleged the plaintiff had ceased to be an invitee and her status was that of a mere licensee on the premises. On the first trip to the eighth floor and return to the first floor it could reasonably be said that the deviation from the necessary route of travel from the banking rooms and the time consumed would be so slight that plaintiff's status as an invitee could not be affected. But the accident in question occurred after the plaintiff had made one other round trip in the elevator and was engaged in making the trip for the third time. The purpose of these trips, as we have said, brings the situation squarely under the rule announced in the *Jonosky Case* and in the various texts cited. Her business was not with the defendant, or with any of its tenants; nor was her presence in the elevator on these added trips connected with anything that could be of benefit to the defendant or any of its tenants. The purpose of her presence was to discuss matters of a per-

sonal nature with one of the defendant's employees, and the matter under discussion was something merely in plaintiff's interest and for her own purposes.

Plaintiff urges that her mother did have authority to invite her to enter and ride in the elevator and to remain in it, and that in so doing she was acting within the scope of her authority, and that the defendant is bound by such an invitation. Under the circumstances, where the purpose of remaining in the elevator was only for the convenience of plaintiff and her mother in discussing personal matters, there is no merit in that argument. (*Crawford* v. *Rice*, (5 Cir.) 36 Fed. 199.)

The facts are not in dispute as to the extra trips made in the elevator, nor of the purposes of those trips. There is no fact situation so far as the determination of plaintiff's status is concerned to be determined by the jury. Therefore the court erred in refusing to instruct the jury that as a matter of law the plaintiff was a mere licensee upon the premises of the defendant at the time of the accident here alleged.

In plaintiff's brief she argues that even though it should be · granted that she were not an invitee, yet the court did not err for the reason that even though she were a mere licensee she still could recover from this defendant, and that therefore any errors in the instruction on the point we have discussed would be harmless. With that view we cannot agree.

The degree of duty owing to this plaintiff was entirely different if she were a mere licensee from what it would be if she were an invitee. In instruction 16 the court said that if the jury found "plaintiff was an invitee in the passenger elevator of the defendant at the time of the alleged accident, then you are instructed that at said time it was the duty of the defendant to the plaintiff to exercise the highest degree of care in the operation and maintenance of said elevator." Instruction No. 17 is to the same effect. Other instructions premised upon the theory that plaintiff was an invitee lay down this same rule as to the degree of care owing to the plaintiff in that situation. In Instruction 26 the court said: "If plaintiff did at sometime

after first entering said elevator lose her status as an invitee and become a mere licensee and did remain as a licensee until the time of the alleged accident, then the only duty owing by the defendant to the plaintiff was to refrain from doing her a wilful or wanton injury until such time as the defendant discovered her presence in the elevator, at which time it was defendant's duty to the plaintiff to exercise reasonable care to avoid injuring her thereafter." Instruction No. 28 is to the same effect.

It should therefore be obvious that entirely different rules are applicable in the two situations. We cannot tell from the verdict whether the jury determined that there was only a slight degree of negligence on the part of the defendant, but that nevertheless the plaintiff was an invitee and therefore entitled to recover, or whether the jury found that plaintiff was a mere licensee but that the negligence of the defendant was wilful or wanton, under the rule stated in *McCulloch* v. *Horton*, 102 Mont. 135, 56 Pac. (2d) 1344; *Fusselman* v. *Yellowstone Valley Land & Irr. Co.*, 53 Mont. 254, 163 Pac. 473, Ann. Cas. 1918B, 420; *Jonosky* v. *Northern Pac. Ry. Co.*, supra, and *Chichas* v. *Foley Bros. Grocery Co.*, supra. This court cannot speculate as to what the jury found on these questions, and therefore the error was material and reversible.

Plaintiff's case, as to the existence of negligence, rests solely ▇▇ upon the doctrine of *res ipsa loquitur*. No affirmative proof of negligence was offered by her. Defendant contends that since plaintiff was a mere licensee she must, in order to recover, prove affirmatively wilful or wanton negligence or a failure to exercise ordinary care once her presence was known and that the doctrine has no application in this case. Defendant further urges that if the doctrine does apply where plaintiff is a mere licensee in the state of this record the presumption raised by the doctrine has been rebutted and it is no longer effective to prove the required degree of negligence. If either one of these arguments is correct, then the motion of defendant for a directed verdict should have been granted.

The latter argument is considered at some length in *Vonault* v. *O'Rourke*, 97 Mont. 92, 33 Pac. (2d) 535, 540. That was a malpractice case and it was not necessary to prove either wilful or wanton negligence. Because the discussion is so pertinent, it is here set out fully:

"Defendant argues that, by uncontradicted evidence, he overthrew any inference or presumption of negligence arising from the application of the doctrine of *res ipsa loquitur*; in other words, he takes the position that 'where plaintiff relies upon the presumption (*res ipsa loquitur*) to establish his case, the introduction of evidence of due care by defendant will make the case one for the court in the sense that the mere presumption will not be given the effect of evidence so as to raise a conflict for jury decision.' (45 C. J. 1224.) There is authority sustaining this rule. The cases wherein such a rule is followed base their conclusion upon the consideration that the presumption expressed by the doctrine is not itself evidence. (45 C. J. 1224; *Lawson* v. *Mobile Electric Co.*, 204 Ala. 318, 85 So. 257.) This court has held that such a presumption is evidence. (*Maki* v. *Murray Hospital*, supra [91 Mont. 251, 7 Pac. (2d) 228].) In that case this court said: 'A presumption, which is "a deduction which the law expressly directs to be made from particular facts" (sec. 10602, Rev. Codes 1921), is "indirect evidence" (sec. 10600, Id.), which can only be overcome by other evidence (sec. 10604, Id.).' Again in the same case it was said: 'The applicable doctrine of *res ipsa loquitur* furnishes prima facie evidence of any such negligence, entitling the plaintiff to have his case go to the jury, unless the circumstances are so satisfactorily explained by the defendant, as to cause the presumption of negligence to "fade away in the face of the contrary facts" (*Welch* v. *All Persons*, 85 Mont. 114, 278 Pac. 110, 115), or point to freedom from negligence "with such certainty as to preclude any other reasonable hypothesis." (*Nichols* v. *New York Life Ins. Co.*, 88 Mont. 132, 292 Pac. 253, 255.' See, also, *West* v. *Wilson*, 90 Mont. 522, 4 Pac. (2d) 469; *In re Wray's Estate*, 93 Mont. 525, 19 Pac. (2d) 1051.)

" 'No case should ever be withdrawn from the jury, declared by statute to be the sole judges of the facts, unless the evidence is susceptible of but one construction by reasonable men, and that in favor of defendant, or where the evidence is in such condition that, if the jury were to return a verdict in favor of the plaintiff, it would become the duty of the court to set it aside.' (*Johnson* v. *Herring,* 89 Mont. 420, 300 Pac. 535, 536.)

"We are unwilling to say that the evidence in this case is susceptible of but one construction by reasonable men. 'The doctrine of *res ipsa loquitur* does not cast upon the defendant the burden of disproving negligence in the sense of making it incumbent upon him to establish freedom from negligence by a preponderance of the evidence.' (20 R. C. L. 195; *Johnson* v. *Herring,* supra; *Maki* v. *Murray Hospital,* supra.) The doctrine does not alter the general rule that the burden is upon the plaintiff throughout the case to prove the negligence complained of. (*Lyon* v. *Chicago, etc., R. Co.,* 50 Mont. 532, 148 Pac. 386; *Sweeney* v. *Erving,* 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815, annotation and collection of cases, Ann. Cas. 1914D, 908.) However, the plaintiff may establish his case (and satisfy the requirement as to burden of proof) by means of indirect or circumstantial evidence. (*Boyd* v. *Great Northern Ry. Co.,* 84 Mont. 84, 274 Pac. 293; *Sweeney* v. *Erving,* supra.)

"In the case of *Moffett* v. *Bozeman Canning Co.,* 95 Mont. 347, 26 Pac. (2d) 973, 977, this court held that: 'A fact may be established by indirect evidence, or that which tends to establish the fact by proving another which, though true, does not' of itself conclusively establish that fact, but which affords an inference (sec. 10601, Rev. Codes 1921) or presumption (sec. 10605, Id.) of its existence. * * * Further, the solution of any issue in a civil case may rest entirely upon circumstantial evidence; the law makes no distinction as to the probative value of this class of evidence and direct evidence.' (*Williams* v. *Brownfield Canty Carpet Co.,* 95 Mont. [364] 365, 26 Pac. (2d) 980.)

"In this case, under the rule of *res ipsa loquitur,* the circumstances proved by plaintiff are such as to point by fair and reasonable inference to the conclusion that the defendant was guilty of negligence. They are sufficient to take the case out of the realm of conjecture and to support a finding by the jury that defendant was guilty of negligence. (*Boyd* v. *Great Northern R. Co.,* supra; *Johnson* v. *Herring,* supra.)

"The evidence offered by defendant tended to rebut the inference arising from the prima facie case established by plaintiff, but we are unable to say that defendant's evidence was so overwhelming as to cause the presumption of negligence to 'fade away in the face of contrary facts' or point to freedom from negligence 'with such certainty as to preclude any other reasonable hypothesis.' (*Johnson* v. *Herring,* supra.) It was for the jury to weigh the facts and circumstances proved by the defendant against the presumption upon which plaintiff relied. (*Sweeney* v. *Erving,* supra; *Johnson* v. *Herring,* supra; *Maki* v. *Murray Hospital,* supra; *Boyd* v. *Great Northern R. Co.* See, also, annotations and collection of authorities in 16 L. R. A. (n. s.) 527, and in Ann. Cas. 1914D, 908.)''

We agree that what was said by the court in that case is correct; however, when applied to the facts in this case the opposite result must be reached. Defendant's testimony and the physical facts so completely rebut any presumption of willful or wanton negligence or of lack of ordinary care after plaintiff's presence was discovered that reasonable men could not disagree on it. Were plaintiff an invitee and the defendant in a position where the highest degree of care was necessary, the result might be otherwise.

The unrefuted testimony on the part of the defendant shows that the elevator was of modern design, that it had recently been completely overhauled by men trained in the construction and installation of elevators, that it was equipped with many safety devices, including brakes, automatic catches for stopping it within a few inches if it did fall, that it was counterbalanced so that if anything happened the car would rise rather than

fall, that the motor operated at a fixed speed which could not be increased, that it was regularly inspected by experts, and that many other precautions were taken to insure that no accident would befall. In addition, the testimony for the defendant shows that on the morning in question an employee could find nothing wrong with the elevator at the time plaintiff's mother complained that it was not working properly, that immediately after the fall testified to by plaintiff the elevator was operated by other employees; that experts examined it carefully and could find nothing wrong with it; that no repairs or changes were made after this incident but that the elevator has been in continuous service from then to the time of the trial without any trouble. All of these things point so strongly to a complete lack of willfulness or wantonness or lack of ordinary care as completely to overcome and wipe away any presumption of negligence that might arise under the doctrine of *res ipsa loquitur,* if it does apply in this case. (*Nichols* v. *New York Life Ins. Co.,* 88 Mont. 132, 292 Pac. 253; *Welch* v. *All Persons,* supra; *Maki* v. *Murray Hospital,* supra; *In re Wray's Estate,* 93 Mont. 525, 19 Pac. (2d) 1051.) This being so, the position of defendant is well taken and the action should be dismissed.

Reversed and cause remanded with direction to dismiss the action.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and MORRIS concur.