[Civ. No. 14505. Second Dist., Div. Three. Oct. 9, 1944.]

WALLACE WALKER, a Minor, etc., Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

Gustave L. Goldstein for Appellant.

Frank Karr, C. W. Cornell and O. O. Collins for Respondent.

WOOD (Parker), J.—Plaintiff appeals from a judgment of dismissal which was based upon an order sustaining defendant's general demurrer without leave to amend.

The complaint, based upon the attractive nuisance doctrine, stated in substance: that plaintiff was 14 years of age, and Harold Walker was his guardian ad litem; that at all times mentioned in the complaint defendant was a common carrier of passengers for hire, and operated a railroad in Los Angeles County, a part of such railroad extending from Venice High School to and along Trolley Way in Venice; that on April 28, 1943, and for some time prior thereto and ever since on school days, about 3:30 p.m., the defendant operated a certain train known as the "Pacific Electric Special" from the Venice High School to and along said Trolley Way for the purpose of giving the school children special transportation facilities and catering particularly to them; that on the date mentioned, about 3:30 p.m., plaintiff with others of said school children boarded said train, paying to defendant the usual fare; and that said train was made up of three cars, and plaintiff boarded the middle car. It was alleged further in paragraph

VIII of the complaint that on said day and for a long time prior thereto and ever since, the defendant permitted the following conditions to prevail on said train: (a) Crowding and over-crowding of the cars by the children, many of whom cannot be seated and who stand and crowd at the ends of the cars. (b) Many of the children who stand at the ends of the cars make it a practice to open the doors of said cars "before they come to a complete stop and jump off them before they come to the places where the said" train is scheduled to stop. (c) Frequently the children jump off the steps of the cars either while the train is in motion or at different stops in order to allow the children in the car to get off, and then jump back on the car either before or after the train starts again. (d) Frequently the children stoop or bend down from the steps of the cars and pick up rocks to throw into the canals on the way home. (e) "Each car has four doors, two at each end of the car, the two rear doors of each car being the only ones supposed to be used by passengers in getting off from the car. All the doors have a latch with a bar that crosses the top of the door. These latches are so maintained by the defendant PE that anyone can lift the bars and open the doors. School children make it a practice of raising the bars, opening the doors and then jumping on or off the Special [the train], as hereinabove described." It was alleged further in the complaint that on said day, and for a long time prior thereto, the defendant had full knowledge of said conditions set forth in paragraph VIII, and although the defendant from time to time would warn school children not to indulge in said practices set forth in paragraph VIII, the defendant permitted them "to indulge in such practices and tolerated the same as school children's play or pranks, or what is generally known as 'horse-play' "; that the ages of the children varied from 12 to 18 years of age; that the train, as used by said children, "was attractive and alluring to such school children as a plaything, and very dangerous for them to use as in said paragraph VIII hereof described"; that the children were too young to appreciate the danger incurred by them in acting and playing on the train as described in said paragraph VIII; that "all these things" were known to the defendant; that on said day while plaintiff was a passenger on the train, he and a number of other children were "carrying on" on said train as described in paragraph VIII, and "were jumping on and off from the cars thereof while

the Special [the train] was in motion, and when it stopped to discharge passengers and while it began to move after such stops''; that while the train was proceeding on Trolley Way between Clubhouse Avenue and Brooks Avenue, ''plaintiff together with other school children, who had been standing at the rear [?] door on the front end of the middle car, jumped off from the left door on the front of said car when the Special stopped at or near the intersection of Clubhouse Avenue, and trotted alongside the Special as it resumed motion and picked up speed until the middle car of the Special was approximately at a point near the intersection of Wave Crest Avenue with Trolley Way, when plaintiff attempted to jump back on the said middle car, at the left rear platform thereof by taking hold of the hand railing thereof; and, as plaintiff did so, the Special accelerated its speed, causing plaintiff to lose his grip and balance, so that plaintiff struck his head on the front left platform of the last car of the Special, was thrown with great force and violence to the ground, and said last car of the Special ran over his right foot, dragging plaintiff on the ground for some distance''; that on said day ''plaintiff was only 14 years of age and was too young and inexperienced to foresee or realize the danger in acting as aforementioned''; that plaintiff sustained personal injuries, and the injuries were caused by the defendant ''carelessly, recklessly and negligently permitting the Special to be operated as and in the manner aforementioned, and in failing to safeguard the school children on said Special from the dangers thereof''; and that plaintiff sustained damages in a specified sum of money.

It thus appears that plaintiff, a high school pupil, 14 years of age, had been warned ''from time to time'' not to raise the bars which crossed the tops of the front doors of the cars and which barred the front doors closed; not to open the front doors; and not to jump on or off the train while it was in motion. It also appears that on the day of the accident he was ''carrying on'' on the train as described in paragraph VIII of the complaint, that is, he participated in opening the front doors which the defendant had closed and barred, and he was jumping on and off the train at the front doors while the train was moving. It appears further that immediately preceding the time when he was injured he had jumped off the middle car at the left front door when the train stopped

at an intersection of streets; that he trotted along the side of the train as it "resumed motion and picked up speed" until it had gone approximately to another intersection; and that he then attempted "to jump back on" the car at the left rear door, and was injured.

■ Appellant asserts that the court erred in sustaining the demurrer since the doctrine of attractive nuisance was pleaded in the complaint and it was a question of fact for the jury as to whether the train was an attractive nuisance.

In *Doyle* v. *Pacific Elec. Ry. Co.* (1936), 6 Cal.2d 550, at page 552 [59 P.2d 93], it was said: "But it is not every contrivance or apparatus that a jury will be entitled to treat as an 'attractive nuisance.' Before liability may be imposed, always there must be something in the evidence tending to show that the device was something of a new or uncommon nature with which children might be supposed to be unfamiliar, or not to know of its danger." In *Morse* v. *Douglas* (1930), 107 Cal.App. 196, at page 201 [290 P. 465], it was stated: "The contrivance must be artificial and uncommon, as well as dangerous, and capable of being rendered safe with ease without destroying its usefulness, and of such a nature as to virtually constitute a trap into which children would be led on account of their ignorance and inexperience."

A train is not an uncommon contrivance, but is a very common and well known method of transportation. That it is dangerous to attempt to jump on or off a moving train is a matter of general knowledge, and certainly such danger is familiar to persons whose mental attainments are such that they are pupils in high school. A moving train is not of such a nature as to virtually constitute a trap into which a high school pupil, 14 years of age, would be led to jump on account of his ignorance and inexperience.

The allegation of the complaint, to the effect that defendant permitted him to jump on the moving train even though defendant had repeatedly warned him that such jumping was dangerous, indicates that appellant's contention is, in effect, that defendant owed him the duty of preventing him by force from unbarring the barred doors, and owed him the duty of compelling him by force to heed defendant's warning that it was dangerous to jump on the moving train. Defendant was not required, in order to safeguard this 14-year-old plaintiff, to restrain him by force from opening the barred doors or to

restrain him by force from jumping off or on the moving train. Neither was the defendant required to reconstruct its cars so that it would be impossible for plaintiff to jump off or on the cars while they were in motion. Although plaintiff alleged that, being 14 years of age, he was too young and inexperienced to foresee or realize the danger in opening the barred doors and jumping off and on the moving train, he did not allege that he was too young and inexperienced to understand the warnings of such danger which he admits the defendant gave to him repeatedly. The doctrine of attractive nuisance is not applicable herein.

The judgment is affirmed.

Desmond, P. J., and Shinn, J., concurred.